# UNITED STATES DISTRICT COURT
## OF THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLIANCE OF LEGAL CANNABIS ENTITIES-DC, LLC** ) | |
| 1717 Pennsylvania Avenue NW ) | |
| Suite 1025 ) | |
| Washington, DC 20006, ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| **1314 9th STREET LLC t/a CHILL TOBACCO** ) | |
| 1314 9th Street NW ) | |
| Washington, DC 20009, ) | |
| ) | |
| **HAPPY-BUD WHOLESALER LLC** ) | |
| 1118 9th Street NW ) | |
| Washington, DC 20010, ) | |
| ) | |
| **TG CIGARS INC.** ) | |
| 1120 9th Street NW ) | |
| Washington, DC 20010, ) | |
| ) | |
| **ZA PARTNERS LLC** ) | |
| 44 Garibaldi Way ) | |
| Henderson, Nevada 89011, ) | |
| ) | |
| **PRESS RELEASE VENTURES LLC t/a KUSH BAR** ) | |
| 1910 Southwood Court ) | |
| Bowie, Maryland 20721 ) | |
| ) | |
| **GAS MONKEY DC LLC  t/a MONKO** ) | |
| 700 Constitution Avenue NE, Unit 102 ) | |
| Washington, DC 20002 ) | |
| ) | |
| **M. J. JENNINGS ENTERPRISE LLC t/a RELVA** ) | |
| 311 H Street NW ) | |
| Washington, DC 20001, ) | |
| ) | |
| **KHOSSROW B. FAHIMI t/a SHIVA ELECTRONIC** ) | |
| 2438 18th Street NW ) | |
| Washington, DC 20009 ) | |

**KALIIVA CORP.**                                        )
1731 Columbia Road NW                                   )
Washington, DC 20009,                                   )
                                                        )
**LA LA JUICE CORP. t/a APPLE DREAM**                   )
3106 Mt. Pleasant Street NW                             )
Washington, DC 20010,                                   )
                                                        )
**G LA LA JUICE CORP. t/a APPLE DREAM**                 )
3003 Georgia Avenue NW                                  )
Washington, DC 20001                                    )
                                                        )
**DREAMS LLC**                                          )
2335 18th Street NW                                     )
Washington, DC 20009                                    )
                                                        )
**GROW CLUB LLC**                                       )
2337 18th Street NW                                     )
Washington, DC 20009                                    )
                                                        )
**GRINDSTONE UNIVERSAL LLC**                            )
**PEACE IN THE AIR LLC**                                )
2118 18th Street NW                                     )
Washington, DC 20009                                    )
                                                        )
**CAPITOL HEMP LLC**                                    )
1770 Columbia Road NW                                   )
Washington, DC 20009                                    )
                                                        )
**VIBEZ PRINT LLC**                                     )
1768 Columbia Road NW                                   )
Washington, DC 20009,                                   )
                                                        )
**1314 ½ INC.**                                         )
1601 S. Arlington Ridge Road                            )
Arlington, Virginia 22202,                              )
                                                        )
**WELCH FAMILY LIMITED PARTNERSHIP ELEVEN, LP**         )
3212 Woodhollow Drive                                   )
Chevy Chase, Maryland 20815                             )
                                                        )
**WELCH FAMILY LIMITED PARTNERSHIP FOUR, LP**           )
910 M Street NW, #1130                                  )
Washington, DC 20001-6337,                              )

**THOMAS A. HART** )
3118 Arizona Avenue NW )
Washington, DC 20016, )
)
**EDDINGTON HAMM MOY** )
4640 Muncaster Mill Road )
Rockville, Maryland 20853-1437, )
)
**CYNTHIA PAT GOON OKOYE, SUCCESSOR TRUSTEE** )
**UNDER THE WELLINGTON HAMM MOY TRUST** )
16801 Ethelwood Terrace )
Olney, Maryland 20832, )
)
**BEATRICIA CHU GOON, TRUSTEE UNDER** )
**THE ARTHUR AND BEATRICIA GOON TRUST** )
16801 Ethelwood Terrace )
Olney, Maryland 20832 )
)
**DIANA CHU MOY** )
4205 Bel Pre Road )
Rockville, Maryland 20853 )
)
**GALLERY ROW HOLDINGS LLC** )
251 Little Falls Drive )
Wilmington, Delaware 19808 )
)
**JESSICA L. RACINE-WHITE** )
**JESSICA L. RACINE-WHITE, TRUSTEE** )
7714 13th Street NW )
Washington, DC 20012, )
)
**448 K STREET LLC** )
448 K Street NW, Unit 7 )
Washington, DC 20001, )
)
**DIXIE BARBARA CHINN** )
206 Long Trail Lane )
Rockville, Maryland 20850-7771, )
)
**GEORGIA MIXED USE BUILDING LLC** )
8804 Moverly Court )
Springfield, Virginia 21152-2231, )
)
**BLUE NILE REALTY LLC** )
6717 Pine Drive )
Columbia, Maryland 21046-1114, )

3

**1748 COLUMBIA RD LLC**                                          )
1746 Columbia Road, NW, Suite G                                  )
Washington, DC 20009,                                            )
                                                                 )
**SOLEIMAN ASKARINAM**                                           )
3241 Woodland Drive NW                                           )
Washington, DC 20008,                                            )
                                                                 )
**JONATHAN ASKARINAM, TRUSTEE**                                  )
3232 Garfield Street NW                                          )
Washington, DC 20008,                                            )
                                                                 )
**2337 18 ST LLC**                                               )
2337 18th Street NW                                              )
Washington, DC 20009                                             )
                                                                 )
**2337 BOND ST EQUITIES LLC**                                    )
1775 I Street NW                                                 )
Washington, DC 20006                                             )
                                                                 )
**2118 FSD PROPERTY LLC**                                        )
c/o Fred A. Smith Company                                        )
730 24th Street NW #19                                           )
Washington, DC 20037,                                            )
                                                                 )
**1770 COLUMBIA ROAD N.W. ASSOCIATES LLC**                       )
3816 12th Street NE                                              )
Washington, DC 20017-2630,                                       )
                                                                 )
**1768 COLUMBIA ROAD N.W. ASSOCIATES LLC**                       )
3816 12th Street NE                                              )
Washington, DC 20017-2630,                                       )
                                                                 )
                                      *Defendants*.              )

# COMPLAINT FOR EQUITABLE RELIEF

Plaintiff Alliance of Legal Cannabis Entities-DC, LLC ("ALCE" or "Plaintiff") brings

this action against Defendants 1314 9th Street LLC t/a Chill Tobacco ("Chill Downtown

Dispensary"), Happy Bud Wholesaler LLC and TG Cigars Inc. ( together "Happy Downtown

Dispensary"), Za Partners LLC t/a Granny Za's ("Granny Chinatown Dispensary" and "Granny
Adams Morgan Dispensary"), Press Release Ventures LLC t/a Kush Bar ("Kush Downtown
Dispensary"), Gas Monkey LLC t/a Monko ("Monko Mt Vernon Square Dispensary"), M. J.
Jennings Enterprise LLC t/a Relva ("Relva Mt Vernon Square Dispensary"), Khossrow B.
Fahimi t/a Shiva Electronic ("Shiva Adams Morgan Dispensary"), Kaliiva Corp. ("Kaliiva
Adams Morgan Dispensary"), La La Juice Corp. t/a Apple Dream ("Apple Mt Pleasant
Dispensary" and "Apple Adams Morgan Dispensary"), G La La Juice Corp. t/a Apple Dream
("Apple Park View Dispensary"), Dreams LLC ("Dreams Adams Morgan Dispensary"), Grow
Club LLC ("Grow Adams Morgan Dispensary"), Grindstone Universal LLC ("Peace Adams
Morgan Dispensary"), Peace In The Air LLC ("VIPeace Adams Morgan Dispensary"), Capitol
Hemp LLC ("Hemp Adams Morgan Dispensary"), Vibez Print LLC ("Vibez Adams Morgan
Dispensary"), 1314 ½ Inc. ("1314 9th Property Owner"),  Welch Family Limited Partnership
Eleven, LP ("1118 9th Property Owner"),  Welch Family Limited Partnership Four, LP ("311 H
Property Owner"), Thomas A. Hart ("1219 11th Property Owner"), Eddington Hamm Moy,
Cynthia Pat Goon Okoye -Successor Trustee under The Wellington Hamm Moy Trustee,
Beatricia Chu Goon -Trustee under the Arthur and Beatricia Goon Trust, Diana Chu Moy, and
Gallery Row Holdings LLC (collectively "515 H Property Owner"), Jessica L. Racine-White and
Jessica L. Racine-White Trustee ("1664 Columbia Property Owner" and "2438 18th Property
Owner"), 448 K Street LLC ("444 K Property Owner"), Dixie Barbara Chinn ("1731 Columbia
Property Owner"), Georgia Mixed Use Building LLC ("3003 Georgia Property Owner"), Blue
Nile Realty LLC ("3106 Mt. Pleasant Property Owner"), 1748 Columbia Rd LLC ("1748
Columbia Property Owner"), Soleiman Askarinam ("2335 18th Property Owner"), Jonathan
Askarinam Trustee ("Other 2335 18th Property Owner"), 2337 18th St LLC ("2337 18th Property

Owner"), 2337 Bond St Equities LLC ("Other 2337 18th Property Owner"), 2118 FSD Property

LLC ("2118 18th Property Owner"), 1770 Columbia Road N.W. Associates LLC ("1770

Columbia Property Owner"), and 1768 Columbia Road N.W. Associates LLC ("1768 Columbia

Property Owner") for equitable relief, including injunctive relief against unlicensed cannabis

dispensary-defendants to prevent them from continuing to sell illegal cannabis in the District of

Columbia, and against property owner-defendants to prevent them from continuing to lease to

unlicensed cannabis dispensaries.  Plaintiff also requests equitable relief through the

disgorgement of defendants' profits for the damage caused by the negligence, gross negligence,

false advertising, and unfair competition of Defendants that allowed illegal cannabis dispensaries

to operate in the District of Columbia, selling and promoting the sale of illegal cannabis in DC

and violating the provisions of the Lanham Act, 15 U.S.C. §1125(a), and common law in the

District of Columbia, against false advertising and unfair competition.  In support of this

Complaint, Plaintiff states the following:

## PARTIES

1.      Plaintiff Alliance of Legal Cannabis Entities-DC, LLC ("ALCE") is an alliance

representing the legal cannabis market in the District of Columbia and membership is open to all

legal cannabis entities in the District of Columbia who have been operating in the past three

years and were licensed by the District of Columbia's Alcohol Beverage and Cannabis

Administration ("ABCA") or its predecessor agency, the District of Columbia's Department of

Health ("DOH"), to cultivate cannabis flower (in a variety of strains, both THC and CBD, and

hemp) in the District of Columbia ("cultivators"), to manufacture various cannabis products in

the District of Columbia using cannabis flower cultivated in the District of Columbia, *e.g.* pre-

rolls, cartridges, concentrates, vapes, edibles, etc. ("manufacturers"), and/or to sell to the public

in accordance with the regulatory rules and regulations of ABCA, the legal cannabis flower and other cannabis products cultivated and manufactured in the District of Columbia ("retailers" or "dispensaries").  This legal cannabis market has been damaged by the unlicensed and illegal cannabis dispensaries advertising and operating in interstate commerce, the property owners who provided the commercial space for them to operate and advertise in interstate commerce the property location, and other participants materially contributing to the illegal cannabis market. All legal licensees (cultivators, manufacturers, and dispensaries) have been harmed by lost commercial sales diverted to the illegal cannabis market promoted, managed, and materially assisted by the defendants here.  ALCE is open to all licensees, including that group of 15 licensees who received their licenses before January 1, 2024, and were operating for 3 or more years before that.  However, new cannabis licenses are now being issued by ABCA and these new licensees are also being damaged by the illegal cannabis market.  ALCE is open to both original and new licensees.

2.     ALCE is an LLC organized in the District of Columbia with its principal place of business at 1717 Pennsylvania Avenue NW, Suite 1025, Washington, DC 20006.  All members of ALCE were licensed by ABCA (or DOH and subsequently renewed by ABCA) to cultivate/manufacture cannabis flower and other cannabis products in the District of Columbia, and/or to sell such legal cannabis at retail in the District of Columbia.  Two such licensees, DC Holistic Wellness Group LLC (operated at 4721 Sheriff Road NE, Washington, DC 20019) and Herbal Alternatives II LLC (operating at 1710 Rhode Island Avenue NW, Washington, DC 20036), both LLCs organized in the District of Columbia, are the organizing members of ALCE. Other licensees who have or had cultivation/manufacturing licenses and/or cannabis retailer

licenses have joined ALCE.  ALCE also remains open for all cannabis licensees to become
ALCE members at any time.

3.      Defendant 1314 9th Street LLC t/a Chill Tobacco ("Chill Downtown Dispensary")
operates an unlicensed and illegal cannabis dispensary in the commercial space at 1314 9th Street
NW, Washington, DC 20009.   The Chill Downtown Dispensary is an LLC organized in the
District of Columbia with its principal place of business at 1314 9th Street NW, 20009.

4.      Defendant Happy-Bud Wholesaler LLC ("Happy-Bud Wholesaler") together with
Defendant TG Cigars Inc. operates an unlicensed and illegal cannabis dispensary in commercial
space at 1118 9th Street NW, Washington, DC 20010 ("Happy Downtown Dispensary").
Defendant Happy-Bud Wholesaler is an LLC organized in the District of Columbia with its
principal place of business at 1118 9th Street NW,  Washington, DC 20010.

5.      Defendant TG Cigars Inc. ("TG Cigars") together with Defendant Happy-Bud
Wholesaler LLC operates an unlicensed and illegal cannabis dispensary in commercial space at
1118 9th Street NW, Washington, DC 20010 ("Happy Downtown Dispensary").  Defendant TG
Cigars is a corporation organized in the District of Columbia with its principal place of business
at 1120 9th Street NW, Washington, DC 20010.

6.      Defendant Za Partners LLC t/a Granny Za's operates two unlicensed and illegal cannabis
dispensaries that lease commercial space at 515 H Street NW, Washington, DC 20001 ("Granny
Chinatown Dispensary") and at 1664 Columbia Road NW, Washington, DC 20009 ("Granny
Adams Morgan Dispensary"). Defendant Za Partners LLC is an LLC organized in the State of
Nevada with its principal place of business at 44 Garibaldi Way, Henderson, Nevada 89011.  It is
registered to do business in the District of Columbia and has appointed a local registered agent.

7.     Defendant Press Release Ventures LLC t/a Kush Bar ("Kush Downtown Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 1219 11th Street NW, Washington, DC 20001.  The Kush Downtown Dispensary is an LLC organized in the District of Columbia with its principal place of business listed at 1910 Southwood Court, Bowie, Maryland 20721.

8.     Defendant Gas Monkey DC LLC t/a Monko ("Monko Mt Vernon Square Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 444 K Street NW, Washington, DC 20001.  The Monko Mt Vernon Square Dispensary is an LLC organized in the District of Columbia with its registered business address at 700 Constitution Avenue NE, Unit 102, Washington, DC 20002.

9.     Defendant M.J. Jennings Enterprise LLC t/a Relva ("Relva Mt Vernon Square Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 311 H Street NW, Washington, DC 20001. The Relva Mt Vernon Square Dispensary is an LLC organized in the State of Maryland with its principal office listed as 3810 Glen Avenue, Baltimore, Maryland 21215.  It is also registered to do business in the District of Columbia with its principal place of business in DC at 311 H Street NW, Washington, DC 20001.

10.     Defendant Khossrow B. Fahimi t/a Shiva Electronic ("Shiva Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 2438 18th Street NW, Washington, DC 20009.  The name "Khossrow B. Fahimi" is a trade name registered in DC but does not appear to be incorporated.  The Shiva Adams Morgan Dispensary is an unincorporated individual who resides in the Commonwealth of Virginia at 13119 Willow Edge Court, Clifton, Virginia 20124.

11.     Defendant Kaliiva Corp. ("Kaliiva Adams Morgan Dispensary") operated for several years as an unlicensed and illegal cannabis dispensary in the commercial space at 1731 Columbia Road NW, Washington, DC 20009; however, it has been recently licensed by ABCA and will be re-opening as a licensed cannabis dispensary.   The Kaliiva Adams Morgan Dispensary is a corporation organized in the District of Columbia with its principal place of business at 1731 Columbia Road NW, Washington, DC 20009.

12.     Defendant La La Juice Corp. t/a Apple Dream operates two unlicensed and illegal cannabis dispensaries in the District of Columbia that lease commercial space at 3106 Mount Pleasant Street NW, Washington, DC 20010 ("Apple Mt Pleasant Dispensary"), and 1748 Columbia Road NW, Washington, DC 20009 ("Apple Adams Morgan Dispensary").  Defendant La La Juice Corporation is a corporation organized in the District of Columbia with its principal place of business at 3106 Mount Pleasant Street NW, Washington, DC 20010.

13.     Defendant G La La Juice Corp. t/a Apple Dream ("Apple Park View Dispensary") operates an unlicensed and illegal cannabis dispensary in the District of Columbia that leases commercial space at 3003 Georgia Avenue NW, Washington, DC 20001. Defendant G La La Juice Corp. and Defendant La La Juice Corp. are affiliated entities owned by Mr. Hicham Benkhraba, and they both operate unlicensed cannabis dispensaries using the same trade name at separate locations.

14.     Defendant Dreams LLC ("Dreams Adams Morgan Dispensary") operated an unlicensed and illegal cannabis dispensary in the District of Columbia that leases commercial space at 2335 18th Street NW, Washington, DC 20009.  The Dreams Adams Morgan Dispensary is an LLC organized in the District of Columbia with its principal place of business at 2335 18th Street NW, Washington, DC 20009.

15.    Defendant Grow Club LLC ("Grow Adams Morgan Dispensary") operated an unlicensed and illegal cannabis dispensary in the District of Columbia that leased commercial space at 2337 18th Street NW, Washington, DC 20009.  The Grow Adams Morgan Dispensary is an LLC organized in the District of Columbia with its principal place of business at 2337 18th Street NW, Washington, DC 20009.

16.    Defendant Grindstone Universal LLC t/a Peace ("Peace Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary in the District of Columbia that leases commercial space on the First Floor of 2218 18th Street NW, Washington, DC 20009.  Mr. Darel Dawson owns and operates both Grindstone Universal LLC and Peace In The Air LLC which are both unlicensed and illegal cannabis dispensaries that operate out of the same building. Grindstone Universal LLC is an LLC organized in the District of Columbia with its principal place of business at 2118 18th Street NW, Washington, DC 20009.

17.    Defendant Peace In The Air LLC t/a VIPeace ("VIPeace Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary in the District of Columbia that leases commercial space on the Basement Level of  2118 18th Street NW, Washington, DC 20009. Defendant Peace In The Air LLC  is an LLC organized in the District of Columbia with its principal place of business at 2118 18th Street NW,  Washington, DC 20009.

18.    Defendant Capitol Hemp LLC ("Hemp Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 1770 Columbia Road NW, Washington, DC 20009.  The Hemp Adams Morgan Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1770 Columbia Road NW, Washington, DC 20009.

19.    Defendant Vibez Print LLC ("Vibez Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 1768 Columbia Road NW,

Washington, DC 20009.  The Vibez Adams Morgan Dispensary is an LLC organized in the District of Columbia with its registered business address at 1835 7th Street NW, #161, Washington, DC 20001, and its principal place of business at 1768 Columbia Road NW, Washington, DC 20009.

20.     Defendant 1314 ½ Inc. ("1314 9th Property Owner") is the owner of the commercial property located at 1314 9th Street NW, Washington, DC 20009.  The 1314 9th Property Owner is a corporation organized in the District of Columbia with its headquarters business address at 1601 S. Arlington Ridge Road, Arlington, Virginia 22202-1624, and it has a resident agent in the District of Columbia.

21.     Defendant Welch Family Limited Partnership Eleven, LP ("1118 9th Property Owner") is the owner of the commercial property located at 1118 9th Street NW, Washington, DC 20010. The 1118 9th Property Owner  is a Limited Partnership organized in the State of Maryland with its principal place of business listed at 2611 Spencer Road, Chevy Chase, Maryland 20815.

22.     Defendant Welch Family Limited Partnership Four, LP (311 H Property Owner") is the owner of the commercial property located at 311 H Street NW, Washington, DC 20001.  The 311 H Property Owner is a Limited Partnership organized in the State of Maryland with principal place of business listed at 2611 Spencer Road, Chevy Chase, Maryland 20815, but the 311 H Street Property Owner is registered to do business in the District of Columbia and lists it business address as 910 M Street NW, #1130, Washington, DC 20001-6337

23.     Defendant Thomas A. Hart ("1219 11th Property Owner") is the owner of the commercial property located 1219 11th Street NW, Washington, DC 20001.  He resides in the District of Columbia at 3118 Arizona Avenue NW, Washington, DC 20016.

24.     Defendants Eddington Hamm Moy, Cynthia Pat Goon Okoye -Successor Trustee under The Wellington Hamm Moy Trustee, Beatricia Chu Goon -Trustee under The Arthur and Beatricia Goon Trust, Diana Chu Moy, and Gallery Row Holdings LLC (collectively "515 H Property Owner") represent the ownership and are responsible for management of the commercial property located at 515 H Street NW, Washington, DC 20001 during the past 3-year period of relevance to this Complaint. On information and belief each of the individual defendants owned 25% of the 515 H Street property until October 21, 2024, when they transferred their ownership interests to Gallery Row Holdings LLC.  Defendant Eddington Hamm Moy is a resident of the State of Maryland and resides at 4630 Muncaster Mill Road, Rockville, Maryland 20853; Defendant Cynthia Pat Goon Okoye is a resident of the State of Maryland and resides at 16801 Ethelwood Terrace, Olney, Maryland 20832; Defendant Beatricia Chu Goon is a resident of the State of Maryland and resides at 16801 Ethelwood Terrace, Olney, Maryland 20832; Defendant Diana Chu Moy is a resident of Maryland and resides at 4205 Bel Pre Road, Rockville, Maryland 20853; and Gallery Row Holdings LLC is an LLC organized in the State of Delaware with its principal place of business at 251 Little Falls Drive, Wilmington, Delaware.

25.     Defendants Jessica L. Racine-White and Jessica L. Racine-White Trustee are the owners of two commercial properties leased to unlicensed and illegal cannabis dispensaries in the District of Columbia.  Defendant Jessica L. Racine-White appears to own both properties in both her individual capacity and as trustee of The Herbert W. White Revocable Trust.  She owns the commercial property located at 1664 Columbia Road NW, Washington, DC 20009 ("1664 Columbia Property Owner"), and the commercial property located at 2438 18th Street NW,

Washington, DC 20009 ("2438 18th Property Owner").  Ms. Racine-White resides in the District

of Columbia at 7714 13th Street NW, Washington, DC 20012.

26.     Defendant 448 K Street LLC ("444 K Property Owner") is the owner of the commercial

property located at 444 K Street NW, 20001.  The 444 K Property Owner is an LLC organized in

the District of Columbia with its business address now listed at 448 K Street NW, Unit 7,

Washington, DC 20001.

27.     Defendant Dixie Barbara Chinn ("1731 Columbia Property Owner") is the owner of  the

commercial property located at 1731 Columbia Road NW, Washington, DC 20009.  Ms. Chinn is

a Maryland resident and she resides at 206 Long Trail Lane, Rockville, Maryland 20850-7771.

28.     Defendant Georgia Mixed Use Building LLC ("3003 Georgia Property Owner") is the

owner of the commercial property located at 3003 Georgia Avenue NW, Washington, DC 20001.

The 3002 Georgia Property Owner is an LLC organized in the Commonwealth of Virginia, and

its principal place of business is 8804 Moverly Court, Springfield, Virginia 22152-2231.

29.     Defendant Blue Nile Realty LLC ("3106 Mt Pleasant Property Owner") is the owner of

the commercial property located at 3106 Mount Pleasant Street NW, Washington, DC 20010.

The 3106 Mt Pleasant Property Owner is an LLC organized in the District of Columbia with its

business address listed at 6717 Pine Drive, Columbia, Maryland 21046-1114.

30.     Defendant 1748 Columbia Rd LLC ("1748 Columbia Property Owner") is the owner of

the commercial property located at 1748 Columbia Road NW, Washington, DC 20009. The 1748

Columbia Property Owner is an LLC organized in the District of Columbia with its business

address listed as 1746 Columbia Road NW, Suite G, Washington, DC 20009-2863.

31.     Defendant Soleiman Askarinam ("2335 18th Property Owner") was until recently the

owner of  commercial property located at 2335 18th Street NW, Washington, DC 20009.  The

14

2335 18th Property Owner is a resident of the District of Columbia and resides at 3241 Woodland Drive NW, Washington, DC 20008.

32.     Defendant Jonathan Askarinam Trustee ("Other 2335 18th Property Owner") is a trustee under the The Soleiman Askarinam Revocable Trust, and on or about May 23, 2024, the commercial property located at 2335 18th Street NW, Washington, DC was transferred by Defendant Soleiman Askarinam to his revocable trust. Mr. Jonathan Askarinam Trustee is a resident of the District of Columbia and resides at 3232 Garfield Street NW, Washington, DC 20008.

33.     Defendant 2337 18th St LLC ("2337 18th Property Owner") is the owner of the commercial property located at 2337 18th Street NW, Washington, DC 20009 which it purchased on or about August 4, 2023 from 2337 Bond St Equities LLC ("Other 2337 18th Property Owner"). The 2337 18th Property Owner is an LLC organized in the District of Columbia with its principal place of business at 2337 18th Street NW, Washington, DC 20009.

34.     Defendant 2337 Bond St Equities LLC ("Other 2337 18th Property Owner") is the previous owner of the commercial property located at 2337 18th Street NW, Washington, DC 20009 which it sold to the 2337 18th Property Owner on or about August 4, 2023. The Other 2337 18th Property Owner is an LLC organized in the State of Delaware with its principal place of business at 1775 I Street NW, Suite 1150, Washington, DC 20006.

35.     Defendant 2118 FSD Property LLC ("2118 18th Property Owner") is the owner of commercial property located at 2118 18th Street NW, Washington, DC 20009. The 2118 18th Property Owner is an LLC organized in the District of Columbia with its business address listed at c/o Fred A. Smith Company, 730 24th Street NW, Washington, DC 20037.

36.     Defendant 1770 Columbia Road N.W. Associates LLC ("1770 Columbia Property Owner") is the owner of commercial property located at 1770 Columbia Road NW,  Washington, DC 20009.  The 1770 Columbia Property Owner is an LLC organized in the District of Columbia with its business address listed as 3816 12th Street NE, Washington, DC 20017.

37.      Defendant 1768 Columbia Road N.W. Associates LLC ("1768 Columbia Property Owner") is the owner of commercial property located at 1768 Columbia Road NW,  Washington, DC 20009.  The 1768 Columbia Property Owner is an LLC organized in the District of Columbia with its business address listed as 3816 12th Street NE, Washington, DC 20017.


### JURISDICTION AND VENUE

38.     This Court has federal question jurisdiction over this case, 28 U.S.C. §1331 and 15 U.S.C. §1121, and supplemental jurisdiction over the state law claims, 28 U.S.C. §1367.

39.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the actionable activities took place in the District of Columbia, the illegal dispensaries operated in the District of Columbia and all commercial properties used by these dispensaries are located in the District of Columbia.

### FACTS

**A.  ALCE**

40.     The cultivation of cannabis and the manufacture of cannabis products in the District of Columbia and the sale and distribution of such is governed by the Legalization of Marijuana for Medical Treatment Amendment Act of 2010, as amended, D.C. Code §7-1671.05, *et seq*. and the rules issued by ABCA, D.C. Code §25-204.02 and DCMR Title 22-C. These laws and ABCA rules require that cultivators, manufacturers, and retailers of cannabis be licensed by ABCA.

D.C. Code §7-1671.06.  The only cannabis flower (including all THC and CBD strains, and hemp) and other cannabis products that can be legally sold in the District of Columbia are subject to these laws and regulations.

41.    D.C. Code §7-1671.01(22) states: An "unlicensed establishment" is a sole proprietorship, partnership, or other business entity that:

(A)  Sells, exchanges as part of a commercial transaction, or delivers cannabis and cannabis products;
(B)  Operates at or delivers from a specific location in the District; and
(C)  Is not licensed by ABCA as a cultivation center, retailer, internet retailers, manufacturer, courier or testing laboratory.

42.    D.C. Code §7-1671.08(a) provides that:

Any person who manufactures, cultivates, posses, administers, dispenses, distributes or uses cannabis, or manufactures, posses, distributes, or uses paraphernalia, in a manner not authorized by this chapter or the rules issued pursuant to §7-1671.13 shall be subject to criminal prosecution and sanction under subchapter I of Chapter 11 of Title 48[§48-1101 *et seq.*].[1]

43.    Unlicensed and illegal cannabis dispensaries in DC often sell illegal flavored tobacco products and illegal "magic" mushrooms (containing psilocybin, a Schedule I Controlled Substance that has a hallucinogenic effect) to increase the mix of "buzz" products offered consumers to gain an unfair competitive over legal cannabis dispensaries that do not sell these products.  Additionally, many illegal cannabis dispensaries are located within ¼-mile of a middle or high school where it is illegal to sell any electronic smoking device.

---

[1] The definition of "cannabis" as used throughout DC laws and regulations is defined in Section 102(3) of the DC Controlled Substance Act of 1981, D.C. Code §48-901.02.  This definition adopted in the DC Marijuana Legalization Act, D.C. Code §7-1671.01(2A).  This definition includes all parts of the plant genus Cannabis which includes THC, CBD and all other cannabinoids.  *See also, Korneguy v. United States*, 236 A.3d 414, 420 (D.C. 2020)(noting D.C. Code §48-904.01(a)(1) does not permit an adult to "sell, offer for sale, or make available for sale" cannabis, except pursuant to D.C. Code §7-1671.01 *et seq*. which establishes the licensing procedures under ABCA.)

44.    The Flavored Tobacco Prohibition Amendment Act of 2021, §7-1721.01, *et seq*., makes it

illegal to sell flavored tobacco products or electronic smoking devices within ¼-mile of a middle

or high school.

> §7-1721.08(a)- No person shall sell, offer for sale, receive for sale, distribute, purchase or facilitate the sale of:
>
> (1) A flavored tobacco product; or
> (2) An electronic smoking device within one quarter mile of any middle or high school in the District.

45.    D.C. Code §7-1721.01 Definitions:

> (1)  "Characterizing flavor" means a distinguishable taste or aroma other than tobacco, including fruit, chocolate, vanilla, candy, dessert, alcoholic beverage, menthol, mint or evergreen.
> (1A) "Electronic smoking device" shall have the same meaning as provided in §7-741.01(1).
>
> (1B) "Flavored tobacco product" means any tobacco product or synthetic nicotine product that imparts a characterizing flavor.

46.    The Electronic Cigarette Parity Amendment Act of 2016, D.C. Code §7-741.01

Definitions:

> (1) "Electronic smoking device" means any products, including one composed of a heating element, battery, or electronic circuit, that contains or delivers nicotine or any other substance intended for human consumption that can be used by a person to simulate smoking through inhalation of vapor or aerosol from the product.  The term "electronic smoking device" includes any such products, regardless of whether it is manufactured, distributed, marketed, or sold as an e-cigarette, e-cigar, e-pipe, e-hookah, vape pen, or any other product name or descriptor.

47.    The initial cultivation/manufacturing and retailing licenses were issued by the DC

Government in 2013, and during the past several years prior to this lawsuit, there had been

fifteen licensees who constituted the legal market in the District of Columbia. Several additional

cannabis licensees have been authorized by ABCA since April 1, 2024.

48.     In the past several years due to the operation of illegal unlicensed dispensaries selling cannabis products that are illegal in the District of Columbia, the legal, licensed cannabis market has lost substantial commercial sales diverted to the illegal cannabis market.  Illegal cannabis products are largely indistinguishable by consumers from legal cannabis products which is why the misrepresentation of the legality and origin of the illegal cannabis by defendants and their false advertising has harmed the legal cannabis market through the loss of commercial sales made by illegal dispensaries. Some public estimates put the illegal cannabis revenues in the District of Columbia at $600 million plus per year.

49.     Faced with squeezed margins and substantial commercial sales diverted to the illegal market, several legal licensed cultivators/manufacturers and retailers have been forced to discontinue operations, while illegal market participants such as defendants here have continued to grow and divert commercial sales. Illegal cannabis dispensaries are competitors with the legal cannabis licensees, and those who materially participated in the illegal dispensaries' establishment or by financing, selling, or transporting illegal cannabis, or leasing commercial retail space to permit illegal cannabis dispensaries to make commercial retail cannabis sales, are then also competitors with legal licensees.  All members of ALCE would have standing to sue the defendants in this case.

50.     In recognition of the need for the legal cannabis market to pursue legal action to stop continued sales of illegal cannabis and to seek equitable relief for lost commercial sales, several licensed cannabis entities decided to form the ALCE as an open alliance for all legal cannabis licensees harmed by the continued operation of illegal dispensaries and other participants who materially participated or assisted in the establishment and operation of illegal dispensaries engaged in the sale of illegal cannabis.

51.     ALCE is open to all legal cannabis entities (cultivators, manufacturers, and retailers) including new legal entities, to become members.[2]  The purpose of ALCE as stated in Section 1.4 of its Operating Agreement:

> The purpose of the Company [ALCE] is to protect and safeguard the legal cannabis market in the District of Columbia as represented by those legal entities who were licensed by the District of Columbia Alcohol Beverage and Cannabis Administration ("ABCA") as operators of cannabis retail facilities (i.e., dispensaries) or cannabis cultivation and manufacturing facilities. To accomplish this purpose, the Company is established to pursue legal action against Persons who have either directly or indirectly participated in illegal activities or aided and abetted illegal operators in the illegal sale, distribution, delivery, promotion, handling, advertising or payment for illegal cannabis or illegal substitutable products or otherwise assisting, promoting or enabling these illegal entities to operate and inflict economic harm on individual legal cannabis licensees and/or the legal cannabis market in the District of Columbia. Further, the Company is authorized to engage the services of Persons to represent the Company or to provide investigative or analytical services related to illegal cannabis entities and their operations and Persons providing them with goods and services.
>
> In recognition of the economic harm inflicted on the legal DC cannabis market over the past several years by the illegal cannabis participants and enablers, membership in the ALCE – DC is open to all legal entities licensed by ABCA, who operate or operated legal cannabis facilities.  All Members authorize ALCE - DC to negotiate on behalf of the Members with the Persons involved in or otherwise assisting or enabling the illegal cannabis market in DC so as to contribute to the reduction in illegal sales, removal of illegal products from the market, and to obtain compensation for the economic harm inflicted on the legal cannabis market and licensed entities generally in DC in the last 3 years and continuing.  All Members authorize ALCE – DC to represent their respective interests in the legal cannabis market in DC in judicial proceedings as part of ALCE – DC seeking damages done to the legal market in DC, and to represent to the Court that ALCE – DC has the same standing as each individual Member would have had if it had separately participated as a plaintiff.

52.     All members of ALCE accept its Operating Agreement and the purpose quoted above.

53.     Since membership in ALCE is permanently open to cannabis licensees in the District of Columbia, ALCE expects additional licensees to join ALCE to help protect the legal cannabis

---

[2] There are some restrictions with respect to new members who previously operated illegal dispensaries and who are being sued or subject to being sued by ALCE on behalf of its members.

market in the District of Columbia from the harm caused by illegal cannabis market participants, including the harm they cause by the diversion of commercial sales to the illegal market involving the sale and delivery of illegal cannabis flower and other cannabis products.

54.    ACLE represents its members collectively and has the same standing to sue that its individual members have—all of whom are (were) licensed cultivators, manufacturers and/or retailers, and as a consequence, ALCE has standing to sue the unlicensed and illegal dispensaries in the District of Columbia and those participants, including property owners, who have contributory liability or are otherwise liable for the material assistance they provided the illegal dispensaries in the sale and delivery of illegal cannabis flower and other cannabis products.

55.    ALCE is suing on behalf of the legal cannabis market in the District of Columbia for the injunctive relief from the ongoing harm being caused by defendants to the legal cannabis market represented by ALCE and for equitable damages for the loss of commercial sales from the legal cannabis market in the past three years.  Since ALCE is only seeking equitable relief in the form of injunctive relief against defendants to cease illegal cannabis sales and equitable damages in the form of disgorgement of defendants' profits, the direct participation here of individual members of ALCE is not necessary.

56.    Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), permits ALCE "subject to the principles of equity to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  ALCE only seeks to recover the defendants' profits and the costs of this action. And, as otherwise provided in Section 35(a):

> The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, or any sum above the amount found as actual damages,

not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.  The court in exceptional cases may award reasonable attorney fees.

57.    ALCE seeks disgorgement of the profits of each property owner-defendant based on the lease revenues each property owner-defendant received from illegal dispensary-defendants. Since the lease rates used are triple net[3], the profits of each property-owner are equivalent to their lease revenues.  The lease revenues/profits of each property owner-defendant are reasonably determined from using the Costar[4] commercial property database plugged into the following formula:

> •(Square Footage of the property leased by the property owner-defendant) x (Lease Rate for the leased property) x (time period the property owner-defendant leased to the illegal dispensary-defendant) =  Profits to be disgorged

58.    ALCE seeks disgorgement of the profits of each illegal dispensary-defendant based on the sales revenues received by each illegal dispensary-defendant from the sale of illegal cannabis.  The sale of legal goods in the illegal dispensaries is assumed to be negligible since such products were just for "show," and the sale of any other illegal products deemed substitutable for cannabis (*e.g.* "magic" mushrooms) are classified as such for these profit calculations.  The sales revenues/profits of each illegal cannabis dispensary-defendant are reasonably determined from using the same Costar commercial database plugged into the following formula:

---

[3] Triple net is a lease –common in commercial real estate- where the tenant pays all expenses, including real estate taxes, building insurance and maintenance, in addition to the cost of rent and utilities.

[4] Costar is the world's leader in real estate information.  It has the most comprehensive database and online platform for commercial real estate information, analytics and news, and its database includes leasing information for all the commercial properties involved in this case.

•Sales revenues are reasonably estimated at 10 times greater than commercial rent paid (10 is used in these calculations as a reasonable factor which equals paying 10% of sales in rent);
•Dispensary retail mark-up is assumed to be comparable to other industry retail margins of approximately 60%, minus rent (10%) and other expenses, leaving 25% of sales as the net profits.
•(Rent x 10) x 25% = Profits to be disgorged

59.    The disgorgement of the defendants' profits is equitable relief and does not require the participation of any individual members of ALCE as shown in this Complaint.

### B.    1314 9TH PROPERTY OWNER – CHILL DOWNTOWN DISPENSARY

60.    Defendant 1314 ½ Inc. (1314 9th Property Owner") leases 2,776 sf of commercial space (1388 sf on the 1st Floor and 1388 sf on the Lower Floor level) to Defendant 1314 9th Street LLC t/a Chill Tobacco ("Chill Downtown Dispensary") who operates an unlicensed and illegal cannabis dispensary at that location within ¼-mile of a middle or high school where the sale of any electronic smoking devices is prohibited by DC law.   In addition to illegally selling cannabis and electronic smoking devices, the Chill Downtown Dispensary also sells flavored tobacco products that are also illegal to sell in DC.  According to Costar, the rent for this commercial retail space was between $38-$47/sf; ALCE uses $38/sf for the Lower Level and $47/sf for the 1st Floor in its calculations of the property owner's profits as the most likely rates under the factual circumstances of this lease.

61.    The 1314 9th Property Owner intentionally leased its commercial space for the sale of illegal cannabis. The 1314 9th Property Owner was aware that its tenant (or subtenant) was operating as an illegal cannabis dispensary and has leased commercial space at least 3 years ago, as confirmed by Certificate of Occupancy (CO22069) to use the space for a non-cannabis "Retail Smoke Shop" issued December 12, 2021. (No retailers in DC are permitted to sell flavored tobacco products even those with retail tobacco licenses or Certificates of Occupancy for non-

cannabis "smoke" shops.)  The dispensary also obtained a Cigarette Retail license (410322802478)  on January 1, 2022.  The property owner and dispensary concealed from the DC Zoning Office that the intended use was as an illegal cannabis dispensary.

62.    The Chill Downtown Dispensary did not hide from the 1314 9th Property Owner its intended use of the property for illegal purposes.  The front windows contained illuminated signs boasting "THC" and "Disposable Vapes." Two A-frame signs on the sidewalk display a marijuana plant sign, and state that inside the store  "420 Supplies", "CBD" available, and drawings of mushroom with the come-on "Natural Wellness".  And, illuminated signs on the inside that are visible from outside advertise "THC."  Anyone walking inside the store immediately sees the long display of cannabis products and large glass containers of cannabis flower.

63.    The Chill Downtown Dispensary has recently applied for a cannabis retailer license to operate a legal cannabis dispensary at this location, but applying for a license does not in any way authorize its unlicensed and illegal operations pending the issuance of a license.  Despite awareness as to the illegal activities, the property owner never required the tenant to wait to begin operating until a cannabis license from ABCA had been issued, nor did it seek to prevent the sale of flavored tobacco products or electronic smoking devices.  The 1314 9th Property Owner had pursued the use of its property to serve as an illegal cannabis dispensary and for the sale of other illegal products.

64.    The Chill Downtown Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA. It has at all times operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by the Chill Downtown Dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently

all cannabis sold at this location was illegal and was purchased by Chill Downtown Dispensary in interstate commerce from unknown illegal sources in other states or foreign countries. Additionally, the Chill Downtown Dispensary relied on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis, electronic smoking devices and flavored tobacco in DC.

65.    The 1314 9th Property Owner never investigated or conducted any meaningful due diligence review of the Chill Tobacco Dispensary (or in any way sought to prevent the dispensary from operating unless or until ABCA authorized its operations) before allowing it to begin operating as an unlicensed and illegal dispensary. The 1314 9th Property Owner pursued the lessee to use the space to operate an illegal cannabis and flavored tobacco shop as quickly as it could without regard to the law, the impact of legal dispensaries or the potential harm of allowing the public to consume cannabis from unknown, illegal sources. Additionally, the property owners allowed the illegal dispensary to use the address of the property (and photos of the property) to be published in interstate commerce as the location source for illegal cannabis.

66.    The Chill Downtown Dispensary extensively promotes itself and advertises in interstate commerce as a legal dispensary selling legal cannabis products as a means of undercutting competition from actual legal licensees. The Chill Downtown Dispensary advertises on Google Search, Yelp, Roadtrippers, Cannapages, Google Seach and its own website (www.tobaccoshopwashington.com). It uses the internet to mislead the public into believing Chill Downtown Dispensary is a legal supplier of cannabis, and to promote and advertise itself as a legal dispensary, and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

67.    On its website the Chill Downtown Dispensary promotes it extensive inventory of a wide variety of illegal cannabis products

> ### Welcome to Chill Tobacco:
> Chill Tobacco is your local dispensary in Washington, DC providing everything
> You need, like cannabis products to create your ideal smoking experience.  Our
> shop boasts a large inventory and unbeatable prices, making it the prime
> destination for weeds, edible, CBD, Kratom, and Delta 8.

68.    The Chill Downtown Dispensary relies on its website to promote and advertise its illegal cannabis products as safe quality products while hiding that all these products are not authorized for sale in the District of Columbia by ABCA:

> ### Weed by Chill Tobacco
> At our smoke shop, we are proud to offer high quality products that
> cater to those who enjoy the recreational use of weeds.  We have a
> wide variety of products available for purchase to suit many different
> preferences.
> ***
> ### Cannabis By Chill Tobacco
> Cannabis has been known for its many potential benefits, including
> relaxation and improved focus.  At our dispensary, we understand
> that cannabis effect and quality can vary based on the products used.
> That's why we stock only the best cannabis products available to
> ensure our customers are getting the maximum benefit out of their
> desired effects.  With many options available, you're sure to
> find something that fits your needs no matter what it may be!
> We also offer edibles to provide a tasty alternative to traditional
> cannabis consumption, and various flavors, textures.  Visit us to
> check out our inventory.

69.    The Chill Downtown Dispensary promotes and advertises itself in interstate commerce as a reliable supplier to numerous products containing cannabis and also chemically altered cannabis products as if such products had been approved for sale by ABCA or other governmental authorities:

> ### Delta 8 by Chill Tobacco
> Delta 8 is a minor cannabinoid derived from hemp and offer many

of the same benefits as THC but a milder psychoactive effect. The products at our dispensary are made with the highest quality ingredients and are designed to provide a relaxing and enjoyable experience. Delta 8 products are perfect for those looking for an alternative to traditional THC products. Our team is dedicated to providing our customers with the best service possible. We are always happy to answer any questions and help you find the perfect product for your needs. Visit us today in Washington to check out our cannabis products.

\*\*\*

Edibles by Chill Tobacco

Looking for a delicious way to incorporate the many benefits of CBD into your daily routine? Look no further than our line of edibles! We've got a wide variety of tasty treats infused with high-quality pure ingredients. Our edibles make it easy to enjoy the soothing and relaxing effects of CBD, whether you're looking to unwind after a long day, ease tension, or promote overall wellness. Plus with our commitment to quality ingredients and responsible sourcing, you can forget that you're getting a safe and effective product every time.

70.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Chill Downtown Dispensary), along with flavored tobacco products as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

71.    On February 20, 2024, and again on August 29, 2024, Plaintiff investigated the Chill Downtown Dispensary and observed the display and sale of illegal cannabis, flavored tobacco, and electronic smoking devices.

72.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were made by Chill Downtown Dispensary. The 1314 9th Property Owner materially contributed to the Chill Downtown Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers. Without the material participation of the 1314 9th Property Owner in leasing its commercial space to the Chill Downtown Dispensary (and allowing the publication in interstate commerce of the image and address of the property), the illegal cannabis sales by Chill Downtown Dispensary would not have been made.

73.    The 1314 9th Property Owner's profits from the lease of this commercial space to illegal dispensaries in the past 3 years is $353,940 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

74.    The Chill Downtown Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $3,539,400 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $884,850 (equaling 25% of estimated sales).

### C.    1118 9th PROPERTY OWNER – HAPPY DOWNTOWN DISPENSARY

75.    Defendant Welch Family Limited Partnership Eleven, LP ("1118 9th Property Owner") leases 4938 sf of commercial space to Defendant TG Cigars Inc. ("TG Cigars") and Defendant Happy-Bud Wholesaler LLC ("Happy-Bud Wholesaler") who together operate an illegal dispensary ("Happy Downtown Dispensary") at that location within ¼-mile of a middle or high school where the sale of all types of electronic smoking devices is prohibited under DC law.

76.    The 1118 9th Property Owner entered into a long-term lease with Defendant TG Cigars who moved into the commercial space on August 24, 2017. The sole owner of Defendant TG Cigars is Mr. Negest Allula Dawit who is also the sole member of TG Towers LLC which purchased the adjoining building at 1120 9th Street NW, Washington, DC 20010 on August 28, 2019.  Costar states that the "true owner" of the 1120 9th Street property is Defendant TG Cigars. On November 26, 2019, TG Cigars expanded into the 1120 9th Street building, renovated the retail space at 1118 9th Streety, and entered into an agreement with Happy-Bud Wholesaler to jointly operate the illegal cannabis dispensary, Happy Downtown Dispensary at 1118 9th Street.

77.     The 1118 9th Property Owner intentionally leased its commercial space for the sale of illegal cannabis for much longer than 3 years. According to Costar, the rent for this commercial space was between $49-$60/sf; ALCE uses $60/sf for 2120 sf on the 1st floor, and $49/sf for the remaining 2818 sf on other floors under the lease as the most likely rates under the factual circumstances of this lease.

78.     The Happy Downtown Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA. It has at all times operated as an unlicensed and illegal dispensary selling illegal cannabis. None of the cannabis sold by this dispensary were cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently, all cannabis sold at this location was illegal and was purchased by the Happy Downtown Dispensary in interstate commerce from unknown illegal sources in other states or foreign countries. Additionally, the Happy Downtown Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing systems to sell illegal cannabis in DC.

79.     The 1118 9th Property Owner never investigated or conducted any meaningful due diligence review of the Happy Downtown Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis.  The 1118 9th Property Owner never took any other action to require the Happy Downtown Dispensary to cease selling illegal cannabis. A-frame signs on the sidewalk not only alert local walk-by traffic that cannabis is sold inside but photos of these signs are further posted on the internet to broadcast its presence in interstate commerce.  Additionally, the property owner allowed the illegal dispensary to use the address of the property to be published in interstate commerce as the source location for illegal cannabis.

80.    The Happy Downtown Dispensary promotes itself and advertises in interstate commerce through its use of social media (Instagram (@happybudworldd), Facebook (Happy Bud/Washington D.C. DC), Tik Tok) , paid internet guides to illegal dispensaries (Toker's Guide, Trustedbud.com, Dispensary-in-dc.com), various internet posting, ads and reviews (Google Search, etc.), the use of Telegram, subscription to its own site, and its own website (www.happy-bud-9thst.com).  It uses the internet to falsely promote and advertise itself as a legal cannabis dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

81.    The Happy Downtown Dispensary seeks to gain a competitive advantage by lessening the advantage of legal licensees by falsely claiming it is also legal in that it is I-71 complaint which it intends as a misrepresentation to the public that it is a licensed, legal dispensary operating in DC.  Its website states : "Happy-Bud is initiative-71 complaint which means you do NOT need a medical card—just a valid ID showing you are 21 or older."  Its website further misrepresent why this claim makes it legal:

> Q. What does I-71 Complaint mean?
> A. Initiative 71 is DC's marijuana decriminalization law.  Adults over 21 are legally allowed to possess up to 2 ounces of marijuana.  Although the sale of marijuana and THC products are still illegal, it is perfectly legal for an adult to gift up to an ounce to another adult.  That's where we come in!

82.    ABCA has found that illegal dispensaries claiming to be "I-71 Complaint" was false advertising, a violation of DC Code §7-1671.06(c-1), and a misrepresentation to the public as to the legalization of commercial transactions being conducted by unlicensed cannabis dispensaries.

83.    DC's 2014 Initiative-71 was a voter-approved ballot initiative in the District of Columbia that legalized recreational use of cannabis and made it legal for a person  21 and older to possess

up to 2 ounces and allowed personal cultivation of up to six plants per house or dwelling unit.  It did not authorize the sale or transfer for remuneration of cannabis, nor did it allow for the commercial cultivation of or manufacture of cannabis products.  The DC Government has repeatedly emphasized that commercial "gifting" is the transfer for remuneration and is illegal.  Furthermore, it is not just the retail transaction that is illegal, but the cannabis products being sold in this situation are themselves illegal.

84.     The Happy Downtown Dispensary's website presents an extensive menu of cannabis products available for online ordering, including pre-rolls (3 items $15-$25); different flower strains (57 items of indica, hybrid, and sativa-$40-$80), edibles, chocolate bars, gummies, disposable vapes (10 items), cartridges and concentrates.  Many of its edible cannabis products are deceptively packaged to look like well-known non-cannabis brands, including a full range of Mars chocolate bars (Three Marijuanas-Three Musketeers; Almond Joint-Almond Joy; The Snickers-Snickers; Milky Weed-Milky Way), Cheetos, Trips Ahoy-Chips Ahoy; KushKats, etc.).

85.     Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Happy Downtown Dispensary) as premium, legal products to gain an unfair competitive advantage over legally licensed dispensaries.

86.     On February 3, 2024, February 9, 2024, and August 29, 2024, Plaintiff investigated the Happy Downtown Dispensary and observed the display and sale of illegal cannabis products available for sale.

87.     On November 6, 2024, ABCB issued a Cease and Desist Order against Happy Downtown Dispensary and the 1118 9th Property Owner requiring them to immediately cease "the illegal purchase, sale, exchange, delivery, or any other form of commercial transaction involving cannabis immediately."  In its order, ABCB details how ABCA's investigators investigated the

31

Happy Downtown Dispensary on August 9, 2024, found illegal cannabis activity and issued a warning letter to the property owner and illegal dispensary.  On November 1, 2024, ABCA again investigated the same property and found that the property owner and illegal dispensary had continued their illegal cannabis activity.  Furthermore, the cannabis discovered was tested and found to laced with amphetamines.

88.     The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Happy Downtown Dispensary.  The 1118 9th Property Owner materially contributed to the Happy Downtown Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1118 9th Property Owner in leasing its commercial space to the Happy Downtown Dispensary (and allowing the publication of the image and address of the property), the illegal cannabis sales by Happy Downtown Dispensary would not have been made.

89.     The 1118 9th Property Owner's profits from the lease of this commercial space to illegal dispensaries in the past 3 years is $795,846 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

90.     The Happy Downtown Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $7,958,461 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $1,989,615 (equaling 25% of estimated sales). Defendants TG Cigar and Happy-Bud Wholesaler are jointly and severally responsible for the

harm caused the legal cannabis market by the Happy Downtown Dispensary since they operated it jointly.

### D.    311 H PROPERTY OWNER – RELVA MT VERNON SQUARE DISPENSARY

91.    Defendant Welch Family Limited Partnership Four, LP ("311 H Property Owner") leases 1301 sf of commercial space to M.J. Jennings Enterprise LLC t/a Relva ("Relva Mt Vernon Square Dispensary") who operates an illegal cannabis dispensary at that location.  According to Costar, the rent for this commercial space was between $47-$57/sf; ALCE uses $57/sf in its calculation of the property owner's profits as the most likely rate under the factual circumstances of this lease.

92.    The 311 H Property Owner intentionally leased its commercial space for the sale of illegal cannabis.   The 311 H Property Owner was leasing to the Relva Mt Vernon Square Dispensary at least as far back as December 7, 2020, since that is the date the property owner and dispensary obtained a Certificate of Occupancy (CO2003305) for that commercial space. Although both the property owner and dispensary sought to conceal from the DC Zoning Office that the space would be used for the illegal sale of cannabis by claiming in the CO application that the space would be used for a Retail Vitamin Shop.

93.    The front windows of the Relva Mt Vernon Square Dispensary display illuminated "CBD" and Green Cross signs and a sign stating, "Delta 8 Sold Here".  Once inside it is apparent that the items sold are cannabis products and paraphernalia (also illegal for an unlicensed dispensary to sell) which are openly displayed in the store.

94.    The Relva Mt Vernon Square Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA (or its predecessor agency, the Department of Health).  At all times it has operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold

by this dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia.  Consequently all cannabis sold from this location was illegal in the District of Columbia and was purchased by Relva Mt Vernon Dispensary in interstate commerce from unknown, illegal sources in other states or foreign countries. Additionally, the Relva Mt Vernon Square Dispensary relied on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

95.    The 311 H Property Owner never investigated or conducted any meaningful due diligence review of the Relva Mt Vernon Square Hill Dispensary before entering into a lease because it knew that this dispensary was not licensed and would be involved in the sale of illegal cannabis.  The 311 H Property Owner never took any other action to determine if the Relva Mt Vernon Square Dispensary had any legitimate (legal) business purpose.  Additionally, the property owner allowed the illegal dispensary to use the address or the property (and photos of the property) to be published in interstate commerce as the location source for illegal cannabis.

96.    The Relva Mt Vernon Square Dispensary extensively promotes itself and advertises in interstate commerce through its use of social media (Instagram (@_relva_dc)), paid internet guides to illegal dispensaries (Toker's Guide, Yelp, Leafy, Cannapages.com, Smokeshops.com, Kpfinder.com), various internet postings and ads (Google Search, Yahoo, Hubbiz, MapQuest, Trillist, etc.) and its website (www.relvadc.com).  It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

97.    On its website the Relva Mt Vernon Square Dispensary claims that it operates as a legal I-71 complaint dispensary in order to give false assurances to customers that they are purchasing from an authorized source in DC.  At the same time it attempts to give the impression that

purchasing from a legal dispensary that requires a "Medical card" is a hinderance to buying cannabis when instead you can get legally from an i71 shop such as itself.

> Q. Is it legal to buy cannabis in Washington, DC?
> A. You may visit a medical dispensary if you have a medical card. Otherwise, you can visit an i71 complaint gifting shop which with a purchase you are able to be gifted a small increment of cannabis.

98.     The 143 items listed on its online menu of cannabis and cannabis products on its website includes pre-rolls, disposable vapes, cartridges, concentrates, edibles, powders, tinctures, infused drinks, gummies, topicals and fungi (mushrooms). Each item is described with a clear photo and price and is presented as completely legal to purchase from this dispensary in DC. Frequent purchasers are encouraged to join the dispensary's rewards program to get discounts.

99.     Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Relva Mt Vernon Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

100.    On February 3, 2024, and again on August 29, 2024, Plaintiff investigated the Relva Mt Vernon Square Dispensary and observed the display and sale of illegal cannabis.

101.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Relva Mt Vernon Square Dispensary. The 311 H Property Owner materially contributed to the Relva Mt Vernon Square Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers. Without the material participation of the 311 H Property Owner in leasing its commercial space to the Relva Mt Vernon Square Dispensary (and allowing the promotion in interstate commerce of the image and address of the property), the illegal cannabis sales by Relva Mt Vernon Square Dispensary would not have been made.

102.    The 311 H Property Owner's profits from the lease of this commercial space to illegal dispensaries in the past 3 years is $189,126 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

103.    The Relva Mt Vernon Square Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,891,260 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $472,815 (equaling 25% of estimated sales).

### E.    1219 11TH PROPERTY OWNER – KUSH DOWNTOWN DISPENSARY

104.    Defendant Thomas A. Hart ("1219 11th Property Owner") leases 1050 sf of commercial space to Defendant Press Release Ventures LLC ("Kush Downtown Dispensary") who operates an illegal cannabis dispensary at that location within ¼-mile of a middle or high school where the sale of all electronic smoking devices are prohibited under DC law.

105.    The 1219 11th Property Owner intentionally leases its commercial space for the sale of unauthorized and illegal cannabis. According to Costar, the last lease on this property had a move-in date of January 6, 2022 (approximately 3 years ago) and had a lease rate of $24/sf.  It is apparent looking at the property from the outside or inside where cannabis is openly displayed that the only purpose is to sell illegal cannabis. There is a huge "Kush Bar" sign over the front entry door to the building that is impossible to miss.

106.    The Kush Downtown Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA (or its predecessor agency, the Department of Health).  At all times it has operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by this dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the

District of Columbia.  Consequently all cannabis sold from this location was illegal was the laws of the District of Columbia and was purchased in interstate commerce by Kush Downtown Dispensary from unknown sources in other states or foreign countries.  Additionally, the Kush Downtown Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

107.    The 1219 11th Property Owner never investigated or conducted any meaningful due diligence review of the Kush Downtown Dispensary before entering into a lease because it knew that this dispensary was not licensed and would be involved in the sale of illegal cannabis.  The 1219 11th Property Owner never took any other action to determine if the Kush Downtown Dispensary had any legitimate (legal) business purpose.  Additionally, the property owner allowed the illegal dispensary to use the address of the property (and photos of the property) to be published in interstate commerce as the location source for illegal cannabis.

108.    The Kush Downtown Dispensary promotes itself and advertises in interstate commerce through its use of social media (Instagram (@kushbar), Tik Tok), various internet postings and ads (Google Search, Waze, etc.) and its website (www.kushbar.com).  It uses its website to promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.  For example, the Kush Downtown Dispensary's website states that it operates as a legal dispensary in the District of Columbia and that the public can safely purchase cannabis products from them.

> Kush Bar is the #1 location for exotic THC and CBD gifts in the DMV.  We have purchased with the best brands across the U.S. to provide a one stop shop for everything you need.
> ***
> Q. Do you offer recreational cannabis?
> A. We have a wide range of flower for gifting.

37

109.    There is no legal procedure in the District of Columbia for a commercial cannabis retailer to "gift" cannabis.  Claims like this are continually debunked by ABCA, and entities like Kush Downtown Dispensary that make these false claims are falsely promoting and advertising in an attempt to gain an unfair competitive advantage.

110.    The Kush Downtown Dispensary's website lists a wide variety of cannabis products for sale in its store with photos of each product, a description and posted pricing, including for pre-rolls, deals of the day, exotic strain by weight, edibles, disposable vapes and cartridges.  It presents all these items as legal to purchase in DC under DC law.

111.    On February 20, 2024, Plaintiff investigated the Kush Downtown Dispensary and observed the display and sale of illegal cannabis.

112.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Kush Downtown Dispensary.  The 1219 11th Property Owner materially contributed to the Kush Downtown Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1219 11th Property Owner in leasing its commercial space to the Kush Downtown Dispensary (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by Kush Downtown Dispensary would not have been made.

113.    The 1219 11th Property Owner's profits from the lease of this commercial space to illegal dispensaries in the past 3 years is $75,600 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

114.    The Kush Downtown Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $756,000 (based on the reasonable

business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $189,000 (equaling 25% of estimated sales).

### F. 515 H PROPERTY OWNER – GRANNY CHINATOWN DISPENSARY

115.    Defendants Eddington Hamm Moy, Cynthia Pat Goon Okoye -Successor Trustee under the Wellington Hamm Moy Trustee, Beatricia Chu Goon -Trustee under the Arthur and Beatricia Goon Trust, Diana Chu Moy, and Gallery Row Holdings LLC (collectively "515 H Property Owner") lease 760 sf of commercial space to Defendant Za Partners t/a Granny Za's ("Granny Chinatown Dispensary") who operates an illegal cannabis dispensary at that location within 1/4-mile of a middle or high school.  According to Costar the rent for this commercial space was between $47-$57/sf; ALCE uses $57/sf in its calculation of the property owner's profits as the most likely rate under the factual circumstances of this lease being used for illegal cannabis activity.

116.    The 515 H Property Owner leased their commercial space to Granny Chinatown Dispensary for the sale of illegal cannabis for the past 3 years.  Prior to October 21, 2024, when the property was transferred to Gallery Row Holdings LLC, an affiliated LLC, the four individual defendants owned or controlled the property with each owning 25% and were responsible for the property; thereafter, Gallery Row Holdings LLC assumed control and responsibility.

117.    Any person walking by the dispensary would immediately recognize that it sells cannabis products inside. To begin with there is the Granny Za's logo (caricature of older woman smoking a joint) with its slogan "Not Your Granny's Ganja" plastered on the front of the building and on A-frame signs on the sidewalk. The front window to the dispensary has an illuminated "We Sell

CBD" on it. As soon as you enter the dispensary you see the cannabis flower displayed in glass jars on the countertops.

118.    The Granny Chinatown Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA.  At all times it operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by Granny Chinatown Dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia.  Consequently all cannabis sold from this location was illegal and was purchased by the Granny Chinatown Dispensary from unknown, illegal sources in other states or foreign countries.  Additionally, the Granny Chinatown Dispensary relied on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

119.    The 515 H 18th Property Owner never investigated or conducted any meaningful due diligence review of the Granny Chinatown Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis.  The property owner never took any other action to determine if the Granny Chinatown Dispensary had any legitimate (legal) business purpose.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

120.    The Granny Chinatown Dispensary falsely promotes and advertises in interstate commerce through its use of social media (Instagram@grannyzaofficial), Tik Tok), the use of paid sites to illegal dispensaries (Yelp, Mrweednearme.com, AllBud.com, TrustedBud.com, foursquare.com, AllBud.com, Medium.com, Dealerbaba.com), various internet postings and ads (Google Search, Humidity.com, Wix.com, MapQuest, Thesource.com, 242hub.com, Cylex.com, Washingtononline.com, etc.) and its own website (www.dc1.grannyza.com) and the website of

Granny Za's chain (www.grannyza.com).  It uses the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

121.    The Granny Chinatown Dispensary uses the internet to represent itself as a legally licensed cannabis dispensary in DC:

> Legal and Complaint
> Our cannabis stores are legal.  Granny Za's is licensed. Complaint.  It adheres to all weed in the states where it operates.  New York and Washington, DC. Because of our high compliance with regulations, you can rest assured our products are more than safe.  They are healthy.

122.    Besides falsely representing itself as a legal cannabis dispensary in DC, it misrepresents it cannabis products as also being legal for sale in DC.

> Huge Menu
> Granny Za's offers a comprehensive selection of cannabis products, all of it the best around.  There are buds galore, the smelliest and stickest.  There are marijuana concentrates too.  These include edibles, tinctures and other THC extracts. We even have accessories.  Think bongs, Pipes. Fancy rigs.

123.    Through its online menu and at its store the Granny Chinatown Dispensary offers a wide selection of illegal cannabis products, including at least 9 different strains of flower, pre-rolls, edibles, cartridges, disposable vapes, concentrates. Among its products are Grammy-branded flower disposable vapes, concentrates, gummies, and pre-rolls. None of these cannabis products are legal for sale in the District of Columbia. These products come from other states or foreign countries and are not subject to any lab testing or quality controls.  Offering these products for sale in DC and presenting them as legal products here is intended to gain an unfair competitive advantage over legal licensees.

124.    Deceptively packaged cannabis from illegal sources are marketed by unlicensed dispensaries (like Granny Chinatown Dispensary) as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

125.    On March 5 , 2024, and August 29, 2024, Plaintiff investigated the Granny Chinatown Dispensary and observed the display and sale of illegal cannabis.

126.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Granny Chinatown Dispensary.  The 515 H Property Owner materially contributed to the Granny Chinatown Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 515 H Property Owner in leasing its commercial space to the Granny Chinatown Dispensary (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by Granny Chinatown Dispensary would not have been made.

127.    The 515 H Property Owner's profits from the lease of this commercial space to the illegal dispensary for the past 3 years is $129,960 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years). Responsibility is appropriately apportioned between each individual owner of the property prior to October 21, 2024 based on their individual 25% ownership; thereafter Gallery Row Holdings LLC is fully responsible.

128.    The Granny Chinatown Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,299,600 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $324,900 (equaling 25% of estimated sales).

### G.    1664 COLUMBIA PROPERTY OWNER – GRANNY ADAMS MORGAN DISPENSARY

129.    Defendant Jessica L. Racine-White and Jessica L. Racine-White Trustee ("1664 Columbia Property Owner") lease 2700 sf of commercial space to Defendant Za Partners LLC t/a Granny Za's ("Granny Adams Morgan Dispensary") who operates an illegal dispensary at that location.  According to Costar, this lease was executed on February 28, 2022, with a move-in date of March 30, 2022 (2 years/9 months ago), and the lease rate was $25/sf which is used by ALCE in its calculation of the property owner's profits.

130.    The 1664 Columbia Property Owner intentionally leased its commercial space for the sale of illegal cannabis and never investigated or conducted any meaningful due diligence review of the Granny Adams Morgan Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis.  Any person walking by the Granny Adams Morgan Dispensary would immediately understand that cannabis was being sold inside. There is an illuminated Granny Za's logo/motto (*i.e.*, caricature of old lady smoking weed and motto "Not Your Granny's Ganja") on the side of the building; a-frame sign on the sidewalk with the Granny Za's logo/motto; and a sign above the door to the dispensary proclaiming it to be a weed dispensary.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as to the location source for illegal cannabis.  The 1664 Columbia Property Owner was motivated to lease this space to it based on the knowledge that it would be operating an unlicensed cannabis dispensary, and it assumed this risk.

131.    The Granny Adams Morgan Dispensary has never had a cannabis retailer license issued by ABCA.  At all times it operated as illegal dispensaries selling illegal cannabis. None of the

cannabis it sold was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia.  Consequently all cannabis sold from this location was illegal and purchased by the Granny Adams Morgan Dispensary from unknown, illegal sources in other states or foreign countries.  Additionally, the Granny Adams Morgan Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

132.     The Granny Adams Morgan Dispensary falsely promotes and advertises in interstate commerce through its use of social media (Instagram@grannyzaofficial), Tik Tok), the use of paid sites to illegal dispensaries (Yelp, Mrweednearme.com, AllBud.com, TrustedBud.com, foursquare.com, AllBud.com, Medium.com, Dealerbaba.com), various internet postings and ads (Google Search, Humidity.com, Wix.com, MapQuest, Thesource.com, 242hub.com, Cylex.com, Washingtononline.com, etc.) and its own website (www.dc2.grannyza.com) and the website of Granny Za's chain (www.grannyza.com).  The Granny Adams Morgan Dispensary uses the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

133.     Through its online menu and at its store the Granny Adams Morgan Dispensary offers a wide selection of illegal cannabis products, including various strains of flower, pre-rolls, edibles, cartridges, disposable vapes, concentrates. Among its products are Grammy-branded flower disposable vapes, concentrates, gummies, and pre-rolls. None of these cannabis products are legal for sale in the District of Columbia. These products come from other states or foreign countries and are not subject to any lab testing or quality controls.  Offering these products for

sale in DC and presenting them as legal products here is intended to gain an unfair competitive advantage over legal licensees.

134.    Deceptively packaged cannabis from illegal sources are marketed by Granny Adams Morgan Dispensary as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

135.    On February 27, 2024, and August 29, 2024, Plaintiff investigated the Granny Adams Morgan Dispensary observed the display and sale of illegal cannabis.

136.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Granny Adams Morgan Dispensary.  The 1664 Columbia Property Owner materially contributed to the Granny Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1664 Columbia Property Owner in leasing its commercial space to the Granny Adams Morgan Dispensary (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by Granny Adams Morgan Dispensary would not have been made.

137.    The 1664 Columbia Property Owner's profits from the lease of this commercial space to illegal dispensaries in the past 2 years/9 months is $185,625 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years/9 months).

138.    The Granny Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/9 months are conservatively estimated at $1,856,625 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales). This level of sales, minus the cost of goods (using a reasonable business assumption of 40%),

rent and other expenses would result in estimated profits of $464,062 (equaling 25% of estimated sales).

### H.    2438 18TH PROPERTY OWNER – SHIVA ADAMS MORGAN DISPENSARY

139.    Defendant Jessica L. Racine-White and Jessica L. Racine-White Trustee ("2438 18th Property Owner") leases 862 sf of commercial space to Defendant Khossrow B. Fahimi t/a Shiva Electronic ("Shiva Adams Morgan Dispensary") who operates an unlicensed and illegal cannabis dispensary at that location where it also sells flavored tobacco products that are illegal in DC. According to Costar, the rent for this commercial space is $62-$75/sf; ALCE uses $70/sf in its calculations of the property owner's profits as the most likely rate under the factual circumstance of this lease being used for illegal activity.

140.    The 2438 18th Property Owner intentionally leased its commercial space for the sale of illegal cannabis.  According to Costar, the move-in date under this lease was February 15, 2020 (4 years/9 months ago).  The Shiva Adams Morgan Dispensary functions as a late night cannabis shop staying open to 3:00 am on the weekends.  The illuminated CBD sign in Green is a signal that cannabis is sold inside.

141.    The Shiva Adams Morgan Dispensary never had a cannabis retailer license issued by ABCA.  At all times it has operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia.  Consequently all cannabis sold from this location was illegal and purchased by Shiva Adams Morgan Dispensary in interstate commerce from unknown illegal sources in other states or foreign countries.  Additionally, the Shiva Adams Morgan Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis and flavored tobacco in DC.

46

142.    The 2438 18th Property Owner never investigated or conducted any meaningful due diligence review of the Shiva Adams Morgan Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis.  The 2438 18th Property Owner never took any other action to prevent the sale of illegal cannabis or flavored tobacco. Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

143.    The Shiva Adams Morgan Dispensary openly displays drug paraphernalia in its well-lit storefront window that it promotes on the internet through the publication of photos of the property and storefront window, along with numerous postings in interstate commerce recommending the store as a preferred dispensary for cannabis vapes. By promoting itself as a "electronic" smoke shop open late, it seeks to misrepresent the nature, characteristics, qualities, and legality of the cannabis and flavored tobacco products it sells to confuse or deceive consumers.

144.    On February 7, 2024, and August 29, 2024, Plaintiff investigated the Shiva Adams Morgan Dispensary and observed the display and sale of illegal cannabis.

145.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Shiva Adams Morgan Dispensary.  The 2438 18th Property Owner materially contributed to the Shiva Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 2438 18th Property Owner in leasing its commercial space to the Shiva Adams Morgan Dispensary, the illegal cannabis sales by  Shiva Adams Morgan Dispensary would not have been made.

47

146.    The 2438 18th Property Owner's profits from the lease of this commercial space to illegal dispensaries in the past 3 years is $193,950 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

147.    The Shiva Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,939,500 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $484,875 (equaling 25% of estimated sales).

## I.    444 K PROPERTY OWNER – MONKO MT VERNON SQUARE DISPENSARY

148.    Defendant 448 K Street LLC ("444 K Property Owner") leases 2072 sf of commercial space to Defendant Gas Monkey LLC t/a Monko ("Monko Mt Vernon Square Dispensary") who operates an unlicensed and illegal cannabis dispensary at that location within ¼-mile of a middle or high school.  According to CoStar, the move-in date under this lease was June 2, 2021 (3 years/7 months ago) and the starting rent was $52/sf which is the rate used by ALCE to calculate the property owner's profits.

149.    The 444 K Property Owner intentionally leased its commercial space for the sale of illegal cannabis.  It is apparent from even a cursory look inside the dispensary that's purpose is to sell illegal cannabis  which is prominently displayed throughout the shop. The 444 K Property Owner was motivated to lease this space for an illegal dispensary and was fully aware that the intended activity was illegal and were aware of  the consequences of its actions.

150.    The Monko Mt Vernon Square Dispensary never had a cannabis retailer license issued by ABCA.  At all times it has operated as an unauthorized, unlicensed illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by

48

licensed cultivators or manufacturers in the District of Columbia.  Consequently all cannabis sold from this location was illegal and purchased by Monko Mt Vernon Square Dispensary from unknown illegal sources in other states or foreign countries.  Plaintiff is informed that the Monko Mt Vernon Square Dispensary is applying to ABCA for a legal cannabis retailer license but if one is granted in the future that will not affect its liability for equitable damages for the harm it has already caused the legal cannabis market represented by ALCE.  Additionally, the Monko Mt Vernon Square Dispensary relies on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

151.    The 444 K Property Owner never investigated or conducted any meaningful due diligence review of the Monko Mt Vernon Square Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis.  The 444 K Property Owner never took any other action to determine if the Monko Mt Vernon Square Dispensary had any legitimate (legal) business purpose.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

152.    The Monko Mt Vernon Square Dispensary promotes itself and advertises in interstate commerce using social media (Instagram (@dcmonko), YouTube, Reddit, Facebook (Monko)), paid guides to illegal dispensaries (Toker's Guide, Yelp, Roadtrippers, Dispensaries.com, thecbd.com, 420finder.com, Nextdoor.com Cannawat.com, Cakeesume.com, etc.), various internet posting and ads (Google Search, MapQuest, etc.), and its own website (www.monko.co) to falsely represent itself and the cannabis products it sells as being legal in DC.

> As a luxury I-71 retail cannabis dispensary, we strive to create a premium
> Experience.  A gorgeous setting, friendly staff and truly fantastic unequaled
> Possibilities.  For sky-high THC potency to CBD, whether for pure pleasure

> Elevated wellness or the health of your pet, our full menu is available for online ordering and in-store pick-up.

153.    The Monko Mt Vernon Square Dispensary's website menu of cannabis products includes a variety of flower, pre-rolls, cartridges, vapes, edibles (chocolates, gummies), infused drinks, tinctures, and CBD.  But not one item is cultivated or manufactured by a licensed cultivator or manufacturer in the District of Columbia.  All are illegal here under DC law, but there is no mention of that on the website - to the contrary everything is advertised as being legal. The Monko Mt Vernon Square Dispensary uses the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

154.    On January 31, 2024, and August 29, 2024, Plaintiff investigated the Monko Mt Vernon Square Dispensary an observed the display and sale of illegal cannabis.

155.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Monko Mt Vernon Square Dispensary.  The 444 K Property Owner materially contributed to the Monko Mt Vernon Square Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 444 K Property Owner in leasing its commercial space to the Monko Mt Vernon Square Dispensary, the illegal cannabis sales by Monko Mt Vernon Square Dispensary would not have been made.

156.    The 444 K Property Owner's profits from the lease of this commercial space to Monko Mt Vernon Square Dispensary in the past 3 years is $323,232 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

157.    The Monko Mt Vernon Square Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $3,232,320 (based on the

reasonable business assumption that lease costs approximately equal 10% of retail sales). This

level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and

other expenses would result in estimated profits of $808,080 (equaling 25% of estimated sales).

**J.    1731 COLUMBIA PROPERTY OWNER – KALIIVA ADAMS MORGAN DISPENSARY**

158.    Defendant Dixie Barbara Chinn ("1731 Columbia Property Owner") leases 1385 sf of

commercial space to Defendant Kaliiva Corp. ("Kaliiva Adams Morgan Dispensary") who

operated an illegal dispensary at that location. According to CoStar, the rent for this commercial

space was between $56-$68/sf;  ALCE uses $68/sf in its calculation of the property owner's

profits as the most likely rate under the circumstance of this lease being used for illegal activity.

159.    The 1731 Columbia Property Owner began leasing to Kaliiva no later than December 1,

2022 (as verified by the date of its general business license – 400323802113), and it appears to

have temporarily closed as of March 6, 2024. On that date the Metropolitan Police Department

(MPD) raided the illegal dispensary and seized a variety of illegal psilocybin mushrooms,

cannabis flower, hundreds of cannabis vapes and cannabis-infused edibles.  However,  ABCA

has recently issued a cannabis retailer license to Kaliiva to allow it to reopen in the future. This

Complaint only requests equitable relief for the harm caused the legal cannabis market during the

time period (i.e., 1 year/ 4onths) the 1731 Columbia Property Owner allowed Kaliiva to operate

as an illegal cannabis dispensary prior to the date it reopens in December, 2024 selling legal

cannabis products.

160.    The 1731 Columbia Property Owner intentionally leased its commercial space for the

sale of illegal cannabis prior to the MPD raid. Since the Kaliiva Adams Morgan Dispensary had

only been organized as a new corporation in DC on November 22, 2022, it is apparent that the

1731 Columbia Property Owner was anxious to lease this space to sell illegal cannabis and

possibly some share of the revenues from the operation of an unlicensed, illegal cannabis dispensary.

161.    The Kaliiva Adams Morgan Dispensary never had a cannabis retailer license issued by ABCA.  At all times prior to March 6, 2024, it operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia.  Consequently all cannabis sold from this location prior to its future reopening was illegal and was purchased by the Kaliiva Adams Morgan Dispensary from unknown illegal sources in other states or foreign countries. Additionally, the Kaliiva Adams Morgan Dispensary relied on the use in interstate commerce of ATMJ and/or POS debit and credit card processing to sell illegal cannabis in DC.

162.    The 1731 Columbia Property Owner never investigated or conducted any meaningful due diligence review of the Kaliiva Adams Morgan Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis.  The primary purpose of the dispensary is to sell cannabis illegally and the 1731 Columbia Property Owner understood this and never took any other action to determine if the dispensary any legitimate (legal) business purpose.  Additionally, the property owners allowed the illegal dispensary to use the address (an photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

163.    The Kaliiva Adams Morgan Dispensary promoted itself and advertised in interstate commerce through numerous internet postings and ads (Yelp, About.me, MapQuest, Uferlock.com, Weedsearch.com, Medium.com, Nextedoor.com, Solo.to, TrustedBud.com) and its own website (www.kaliiva.com).  It presented itself online as a legal cannabis dispensary and

its products as being legally authorized for sale in DC, from reputable suppliers and independent

testing.

> Welcome to Kaliiva where we're not just your average dispensary
> in DC—we're your portal to a universe of top-tier cannabis delights
> ***
> At Kaliiva, our cannabis is of very high quality.  All our products
> undergo independent testing.  All come from suppliers that share
> this vision.  They are the very best sources. The most-in demand
> products of all.  The most popular marijuana products in Washington,
> DC.

164.    The Kaliiva Adams Morgan Dispensary's website presents 375 cannabis products for

sale—one of the most extensive offerings of illegal cannabis products in DC. This menu includes

everything in the broad categories of flower, edibles, pre-rolls, and vapes. Everything is falsely

claimed to be legal products in DC.  The Kaliiva Adams Morgan Dispensary used the internet to

falsely promote and advertise itself as a legal dispensary and to misrepresent the nature,

characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

165.    On February 13, 2024, Plaintiff investigated the Kaliiva Adams Morgan Dispensary and

observed the display and sale of illegal cannabis products. The Kaliiva Adams Morgan

Dispensary was applying for a legal cannabis retailer license but was still undercutting the legal

cannabis market by selling illegal cannabis products and passing them off as legal products in

DC.  Although it appears that the dispensary has remained closed to the public since the raid, its

website remains up and running, promoting the illegal sale of illegal cannabis.  It is unclear at

this time if it was making any illegal internet cannabis sales after the MPD raid.

166.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost

commercial sales that were instead made by Kaliiva Adams Morgan Dispensary—at the very

least for the 1 year/4 months period it was open before the MPD raid.  The 1731 Columbia

Property Owner materially contributed to the Kaliiva Adams Morgan Dispensary's deception of

consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1731 Columbia Property Owner in leasing its commercial space to the Kaliiva Adams Morgan Dispensary (and allowing the promotion and advertising  of the image and address of the property), the illegal cannabis sales by  Kaliiva Adams Morgan Dispensary would not have been made.

167.    The 1731 Columbia Property Owner's profits from the lease of this commercial space to the illegal dispensary for past 1 years/4 month period it is known to have been selling illegal cannabis is $125,573 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 1 year/4 months).

168.    The Kaliiva Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over this same 1 year/4 month period are conservatively estimated at $1,255,733 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $313,933 (equaling 25% of estimated sales).

### K.    3003 GEORGIA PROPERTY OWNER – APPLE PARK VIEW DISPENSARY

169.    Defendant Georgia Mixed Use Building LLC ("3003 Georgia Property Owner") leases 1500 sf of commercial space to Defendant G La La Juice Corp. t/a Apple Dream ("Apple Park View Dispensary") who operates an illegal cannabis dispensary and also sells illegal flavored tobacco products at that location that is within ¼-mile of a middle or high school where the sale of any electronic smoking device is illegal, whether a cannabis or nicotine vape.  According to Costar, the rent for this commercial space was between $50-$61/sf;  ALCE uses $61/sf in its

calculation of the property owner's profits as the most likely rate under the factual circumstance of this lease being used for illegal activity.

170.    The 3003 Georgia Property Owner intentionally leased its commercial space to the Apple Park View Dispensary for the sale of illegal cannabis beginning no later than May 1, 2023 (1 year/8 months ago), which is the date the dispensary obtained a Cigarette Retail license (410323806630). Both the property owner and dispensary sought to conceal from the DC Zoning Office the intended use of the property to operate as an unlicensed, illegal cannabis dispensary.

171.    The 3003 Georgia Property Owner was motivated to lease to Apple Park View Dispensary (which was a new LLC that had only recently been formed in DC  on January 1, 2023) because it was a known operator of other illegal cannabis dispensaries in the area, and it was willing to accept  the legal risks involved  in leasing to an unlicensed, illegal cannabis dispensary. The dispensary flies a large flag in front of the dispensary with a green Cross and "Dispensary" written on it, and two front windows have illuminated marijuana plant signs. Once a person steps inside the dispensary it is apparent that only cannabis products are sold here.

172.    The Apple Park View Dispensary never had a cannabis retailer license issued by ABCA. At all times it has operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia.  Consequently all cannabis sold from this location was illegal and purchased by the Apple Park View Dispensary from unknown illegal sources in other states or foreign countries.  Additionally, the Apple Park View Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

173.    The 3003 Georgia Property Owner never investigated or conducted any meaningful due diligence review of the Apple Park View Dispensary before entering into a lease because it knew

that this dispensary was involved in the sale of illegal cannabis and expected it to generate

significant revenues. The dispensary was not hiding from the property owner the nature of its

business.  The primary purpose of the dispensary is to sell cannabis illegally and the 3003

Georgia Property Owner understood this and never took any other action to determine if the

dispensary had any legitimate (legal) business purpose.  Additionally, the property owner

allowed the illegal dispensary to use the address (and photos) of the property to be published in

interstate commerce as the location source for illegal cannabis.

174.    The Apple Park View Dispensary falsely promotes itself and advertises in interstate

commerce through its use of internet posting and ads (Google Search, Yahoo, Giftly, etc.), paid

internet guides to illegal dispensaries (Yelp, Leafy, Mrweednearme.com, Roadtrippers, AllBud,

etc.), and its own website (www.appledreamdc.com) that it is legal in DC and that its cannabis

products are also legal in DC. It uses the internet to falsely promote and advertise itself as a legal

dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it

sells to confuse or deceive consumers.

175.    The Apple Park View Dispensary falsely states on its various internet postings that it is i-

71 complaint as part of its effort to falsely represent that it is a legal dispensary. These false

representations are intended to gain a competitive advantage over the legal cannabis market by

attempting to undermine the intended advantage of being a legal dispensary or cultivator in DC:

> Welcome to Apple Dream, your premier destination for high-quality weed and smoking accessories in Washington, DC.  As an i71 complaint smoke shop we offer exotic weed strains, delicious dibbles, high-quality concentrates, pre-rolls, and smoking accessories.  We gift recreational weed in DC for FREE without a medical marijuana card or visiting a dispensary.  Our store is open to customers 21+ with in-store shopping and pick-up options.  Experience the #1 weed shop in DC with top notch products and exceptional customer service.

176.    On March 21, 2024, and August 29, 2024, Plaintiff investigated the Apple Park View Dispensary and observed the display and sale of illegal cannabis.

177.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that diverted to the illegal market by the Apple Park View Dispensary.  The 3003 Georgia Property Owner materially contributed to the Apple Park View Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 3003 Georgia Property Owner in leasing its commercial space to the Apple Park View Dispensary (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by Apple Park View Dispensary would not have been made.

178.    The 3003 Georgia Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 1 year/8 months is $152,500 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 1 year/8 months).

179.    The Apple Park View Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 1 year/8 months are conservatively estimated at $1,525,000 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $381,250 (equaling 25% of estimated sales).

### L.    3106 MT PLEASANT PROPERTY OWNER – APPLE MT PLEASANT DISPENSARY

180.    Defendant Blue Nile Realty LLC ("3106 Mt Pleasant Property Owner") leases 1152 sf of commercial space to Defendant La La Juice Corp. t/a Apple Dream ("Apple Mt Pleasant Dispensary") who operates an illegal dispensary at that location where it also sells illegal

flavored tobacco products and electronic smoking devices that are illegal to sell within ¼-mile of a middle or high school. According to Costar, the rent for this commercial space was between $50-$61/sf; ALCE uses $61/sf in its calculation of the property owner's profits as the most likely rates under the factual circumstance of this lease being used for illegal activity.

181.    The 3106 Mt Pleasant Property Owner intentionally leased its commercial space for use in the sale of illegal cannabis. The 3106 Mt Pleasant Property Owner first leased to the Apple Mt Pleasant Dispensary no later than October 1, 2020 (4 years/3 months ago) which is the date the dispensary was issued a general business license (400321800684). The property owner and dispensary were collectively motivated to use this commercial space as an unlicensed cannabis dispensary to generate illegal cannabis revenues.

182.    The Apple Mt Pleasant Dispensary never had a cannabis retailer license issued by ABCA. At all times, this dispensary operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia. Consequently all cannabis sold from this location was illegal and purchased in interstate commerce by Apple Mt Pleasant Dispensary from unknown illegal sources in other states or foreign countries. Additionally, the Apple Mt Pleasant Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

183.    The 3106 Mt Pleasant Property Owner never investigated or conducted any meaningful due diligence review of the Apple Mt Pleasant Dispensary before entering into a lease because it knew that this dispensary was unlicensed and involved in the sale of illegal cannabis and expected it to generate significant revenues. The dispensary was not hiding from the property owner the nature of its business. The primary purpose of this unlicensed, illegal dispensary was

to sell illegal supplies of cannabis and the 3106 Mt Pleasant Property Owner understood this and never took any other action to determine if the dispensary had any legitimate (legal) business purpose.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

184.    The Apple Mt Pleasant Dispensary promotes itself and its cannabis products as legal in the District of Columbia to gain an unfair competitive advantage. Although it shares a website with its two other affiliated (and also unlicensed) dispensaries in the area, it maintains its own separate internet accounts, makes separate postings and places its own ads using social media (Instagram(@appledream3106), Facebook (Apple Dream DC)), paid internet guides to illegal dispensaries (Leafy, Yelp, Roadtrippers, Cannapages, AllBud, DCpurplskush, Zaubee.com, Vapepapa.com, Smokeshops.com, etc.), and numerous other internet posting and ads (Google Search, Yahoo, Giftly, MapQuest, etc.), and its website (www.appledreamdc.com).   It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

185.    All internet postings and ads of the Apple Mt Pleasant Dispensary seeks to falsely present itself as a legal and licensed dispensary in DC to convince customers that its products are as safe as those offered by the licensed retailers. On it Facebook it falsely claims to be a "Medical Cannabis Dispensary" in DC which is what legally licensed cannabis dispensaries are often referred to as.

186.    On February 29, 2024, and August 29, 2024, Plaintiff investigated the Apple Mt Pleasant Dispensary observed the display and sale of illegal cannabis.

187.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Apple Mt Pleasant Dispensary.  The 3106 Mt Pleasant Property Owner materially contributed to the Apple Mt Pleasant Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 3106 Mt Pleasant Property Owner in leasing its commercial space to the Apple Mt Pleasant (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by Apple Mt Pleasant Dispensary would not have been made.

188.    The 3106 Mt Pleasant Property Owner's profits from the lease of this commercial space to illegal dispensaries in the past 3 years is $179,712 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 3 years).

189.    The Apple Mt Pleasant Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 year are conservatively estimated at $1,797,120 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $449,280 (equaling 25% of estimated sales).

### M.    1748 COLUMBIA PROPERTY OWNER – APPLE ADAMS MORGAN DISPENSARY

190.    Defendant 1748 Columbia Road LLC ("1748 Columbia Property Owner") leases 1400 sf of commercial space to Defendant La La Juice Corp. t/a Apple Dream ("Apple Adams Morgan Dispensary") who operates an unlicensed, illegal cannabis dispensary at that location where it also sells illegal flavored tobacco products and electronic smoking devices that are illegal to sell within ¼-mile of a middle or high school.  According to Costar, the rent for this commercial space was between $34-$41/sf; ALCE uses $41/sf in its calculation of the property owner's

profits as the most likely rate under the factual circumstance of this lease being used for illegal activity.

191.    The 1748 Columbia Property Owner intentionally leased its commercial space for use in the sale of illegal cannabis.  The 1748 Columbia Property Owner first leased the property to the Apple Adams Morgan Dispensary no later than February 7, 2023 (1 year/11 months ago), which is the date of the dispensary's general business license (4003201177).  The 1748 Columbia Property Owner was motivated to lease the property for use as an unlicensed, illegal cannabis dispensary to obtain a higher lease rate.   It is obvious from simple visual observation that the leased property is used as a shop to sell cannabis.  The storefront windows display illuminated marijuana plants and "CBD" signs, and the front door has "Exit 420" and "Stoner Ave" signs. The inside displays cannabis products.

192.    The 1748 Columbia Property Owner never investigated or conducted any meaningful due diligence review of the Apple Adams Morgan Dispensary before entering into a lease because it knew that this dispensary was unlicensed and involved in the sale of illegal cannabis. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of this unlicensed, illegal  dispensary was to sell illegal cannabis; the 1748 Columbia Property Owner understood this and never took any other action to determine if the dispensary had any legitimate (legal) business purpose.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

193.    The  Apple Adams Morgan Dispensary never had a cannabis retailer license issued by ABCA.  At all times it has operated as an unlicensed, illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed

cultivators or manufacturers in the District of Columbia. Consequently all cannabis sold from this location was illegal and purchased in interstate commerce by the Apple Adams Morgan Dispensary from unknown illegal sources in other states or foreign countries. Additionally, the Apple Adams Morgan Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit processing to sell illegal cannabis in DC.

194.    The Apple Adams Morgan Dispensary promotes itself and its cannabis products as legal in the District of Columbia to gain an unfair competitive advantage the same as its two affiliated stores do. Although it shares a website with its two other affiliated stores, it maintains its own separate internet accounts, and also makes separate postings and places its own ads. The Apple Adams Morgan Dispensary seeks to falsely present itself as a legal and licensed dispensary in DC to convince customers that the cannabis products of all Apple Dream shops are as safe as those offered by the licensed retailers. On its Facebook account (shared its affiliates) it falsely claims to be a "Medical Cannabis Dispensary" in DC which is what legally licensed cannabis dispensaries are often referred to as. The Apple Adams Morgan Dispensary uses the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

195.    On February 13, 2024, and August 29, 2024, Plaintiff investigated the Apple Adams Morgan Dispensary observed the display and sale of illegal cannabis.

196.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were diverted to the illegal market by the Apple Adams Morgan Dispensary. The 1748 Columbia Property Owner materially contributed to the Apple Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers. Without the material participation of

the 1748 Columbia Property Owner in leasing its commercial space to the Apple Adams Morgan Dispensary (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by Apple Adams Morgan Dispensary would not have been made.

197.    The 1748 Columbia Property Owner's profits from the lease of this commercial space to illegal dispensaries in the past 1 year/11 months is $110,016 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 1 year/11 months).

198.    The Apple Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 1 year/11 months are conservatively estimated at $1,110,166 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $275,041 (equaling 25% of estimated sales).

### N.    2335 18TH PROPERTY OWNER – DREAMS ADAMS MORGAN DISPENSARY

199.    Defendant Soleiman Askarinam ("2335 18th Property Owner") leased 1500 sf of commercial space at 2335 18th Street NW, Washington, DC 20009 to Dreams LLC ("Dreams Adams Morgan  Dispensary") who operated an illegal dispensary at that location where it also sold illegal flavored tobacco products.  Defendant Jonathan Askarinam Trustee ("Other 2335 18th Property Owner") continued the lease to Dreams Adams Morgan Dispensary after the property was transferred to the Soleiman Askarinam Revocable Trust.  According to Costar, the rent for this commercial space was between $49-$60/sf: ALCE uses $60/sf in its calculation of the property owner's profits based on the factual circumstance of this lease being used for illegal activity.

200.    The 2335 18th  Property Owner intentionally leased its commercial space for use in the sale of illegal cannabis.  The 2335 18th Property Owner began leasing to the Dreams Adams Morgan Dispensary on or about November 1, 2018 which is the date of the Cigarette retail license (410319000003) issued the Dreams Adams Morgan Dispensary at this location.  Furthermore, an online comment about the Dreams Adams Morgan Dispensary (with photo and address) appears on Popville.com on November 28, 2018, confirming both the existence of the dispensary at that location and the fact that it was also selling cannabis. The property owner's only Certificate of  Occupancy (CO18003380) issued July 19, 2018 was for the use of this space for  a "Retail Variety Store with sales of prepackaged food elements, patent medicine and tobacco".  The sign on the building (Dreams – Smoke and Gifts) conveys the message that the dispensary "gifts" cannabis.  The property owner and the dispensary were motivated to use this commercial space to generate illegal cannabis revenues.

201.    Together the 2335 18th Property Owner and the Other 2335 Property Owner leased this commercial space to the Dreams Adams Morgan Dispensary for 2 yeas/10 months out of the past 3 years: (i) the 2335 18th Property Owner for the period January, 2022 -May, 2024 (2 years/5 months); and (ii) the Other 2335 18th Property Owner for the period June, 2024 – October, 2024 (5 months).

202.    The  Dreams Adams Morgan Dispensary never had a cannabis retailer license issued by ABCA.  At all times it operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia.  Consequently all cannabis sold from this location was illegal and purchased in interstate commerce by Dreams Adams Morgan Dispensary from unknown illegal sources in other states or foreign countries.  Additionally, the Dreams Adams

Morgan Dispensary relied on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

203.    The 2335 18th Property Owner never investigated or conducted any meaningful due diligence review of the Dreams Adams Morgan Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis and expected it to generate significant revenues. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of the dispensary is to sell cannabis illegally and the 2335 18th Property Owner understood this and never took any other action to determine if the dispensary had any legitimate (legal) business purpose.  The Other 18th Property Owner also was aware that the Dreams Adams Morgan Dispensary was unlicensed and that it was selling illegal cannabis products from this location. The 2335 18th Property Owner and the Other 18th Property Owner are owners of multiple properties on this section of 18th Street in Adams Morgan and have experience with what has happened to this neighborhood with illegal drug sales. They allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

204.    On August 7, 2024, the Alcoholic Beverage and Cannabis Board ("ABCB") issued its Order to Cease and Desist against the Dreams Adams Morgan Dispensary, the owner of that unlicensed dispensary, and the 2335 18th Property Owner, ordering them "to cease the illegal purchase, sale, exchange, delivery, or other any other form of commercial transaction involving cannabis immediately."

205.    The August 7th Cease and Desist Order details that on May 2, 2024, the ABCA's Supervisory Investigator (SI) Jason Peru and other District agencies inspected the Dreams Adams Morgan Dispensary and during this inspection  the dispensary "was found to have

engaged in illegal cannabis activity." In response, ABCA sent a warning letter on May 2, 2024 to

the property owner and the dispensary advising of violations of the DC Code regarding the

illegal sale and distribution of cannabis.

206.    The August 7th Cease and Desist Order further details that on July 26, 2024, SI Jason

Peru returned to the dispensary and upon further inspection determined (i) the dispensary was

continuing to sell cannabis illegally while operating in the basement and first floor of the

property, and (ii) the packaging of cannabis products contain misrepresentations that show the

products "illegally, misleadingly, and falsely claim compliance with I-71, the District ballot

initiative decriminalizing small amounts of cannabis".  Based on the evidence gathered, ABCB

determined that the Dreams Adams Morgan Dispensary, its owner and the 2335 18th Property

Owner (i) operate or allowed an unlicensed established to operate  and "engage in the illegal sale

and distribution of cannabis", (ii) the  amount and manner in which the cannabis is displayed for

sale "shows that the business engages in the commercial distribution of cannabis at 2335 18th

Street N.W. without a license issued by ABCA" at this location, and (iii) "the unlicensed

establishment is not in compliance with §48-904.1(a)(1) as it advertises cannabis for sale and

possess more cannabis than permitted by law and illegally claims compliance with Initiative 71."

207.    The August 7th Cease and Desist Order "further notes that the sale and distribution of

illegal cannabis immediately threatens the health and safety of the public because unregulated

product because unregulated product may contain inappropriate and harmful substances (e.g.,

pesticides, other narcotics).  In addition, unlicensed businesses are at risk of selling to persons

that should not have access to cannabis, such as minors."

208.    On September 25, 2024, Plaintiff investigated the Dreams Adams Morgan Dispensary

and observed wall shelfing behind the sales counter draped with large sheets, but when requested

cannabis products were displayed, and sales of cannabis were observed without regard to the existence of ABCB's Cease and Desist Order.

209.    On October 11, 2024, ABCA and the Metropolitan Police Department (MPD) padlocked closed the Dreams Adams Morgan Dispensary for continuing to sell illegal cannabis in violation of its Cease and Desist Order.

210.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Dreams Adams Morgan Dispensary.  The 2335 18th Property Owner materially contributed to the Dreams Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 2335 18th Property Owner in leasing its commercial space to the Dreams Adams Morgan Dispensary (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by Dreams Adams Morgan Dispensary would not have been made.

211.    The 2335 18th Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries for the 2 year/5 month period is $217,500; while the Other 2335 18th Property Owner's profits for the 5-month period that it leased to the illegal dispensary is $37,500 (based on the applicable lease rate for this space multiplied by the square footage multiplied by the time period each leased to the illegal dispensary).

212.    The Dreams Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years (excluding the 2 months since its forced closing) are conservatively estimated at $2,550,000 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods

(using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $637,505 (equaling 25% of estimated sales).

### O.    2337 PROPERTY OWNER – GROW ADAMS MORGAN DISPENSARY

213.    Defendant 2337 18 St LLC ("2337 18th Property Owner") leased 1038 sf of commercial space at 2335 18th Street NW, Washington, DC 20009 to Grow Club LLC t/a Grow Club DC ("Grow Adams Morgan Dispensary") who operated an illegal dispensary at that location. However, the 2337 18th Property Owner only purchased the property on August 4, 2023 from 2337 Bond St Equities LLC ("Other 2337 18th Property Owner").  The Other 2337 18th Property Owner initiated the lease with the Grow Adams Morgan Dispensary, and that lease was transferred with the sale of the property to the 2337 18th Property Owner.  According to Costar, the rent for this commercial space was $49-$60/sf: ALCE uses $60/sf in its calculations of the property owner's profits as the most likely rate under the factual circumstance of this lease being used for illegal activity.

214.    The Other 2337 18th  Property Owner intentionally leased its commercial space for use in the sale of illegal cannabis.  The Other 2337 18th Property Owner was leasing to the Grow Adams Morgan Dispensary no later than February 1, 2022 which is the date the Grow Adams Morgan Dispensary was issued a general business license (4003169020) at that location.  ALCE calculates the property owners' profits based on leasing to the Grow Adams Morgan Dispensary from February 1, 2022 through August 7, 2024, the date on ABCA's Cease and Desist Order: (i) the Other 2337 18th Property Owner for the period February 1, 2022 – August 7, 2023 (1 year/6 months); and (ii) the 2337 18th Property Owner from the period August 8, 2024-August 7, 2024 (1 year).

215.    The  Grow Adams Morgan Dispensary never had a cannabis retailer license issued by

ABCA.  At all times it operated as an illegal dispensary selling illegal cannabis. None of the

cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or

manufacturers in the District of Columbia.  Consequently all cannabis sold from this location

was illegal and purchased in interstate commerce by the Grow Adams Morgan Dispensary from

unknown illegal sources in other states or foreign countries.  Additionally, the Grow Adams

Morgan Dispensary relied on the use in interstate commerce of ATM and POS debit and credit

card processing to sell illegal cannabis in DC.

216.    The Other 2337 18th Property Owner never investigated or conducted any meaningful due

diligence review of the Grow Adams Morgan Dispensary before entering into a lease because it

knew that this dispensary was involved in the sale of illegal cannabis and expected it to generate

significant revenues. The dispensary was not hiding from the property owner the nature of its

business which was generally known to property owners.  The primary purpose of the dispensary

was to sell cannabis illegally and the Other 2337 18th Property Owner understood this and never

took any other action to determine if the dispensary had any legitimate (legal) business purpose.

Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of

the property to be published in interstate commerce as the location source for illegal cannabis.

217.    The 2337 18th Property Owner is an experienced property owner in the area and in

purchasing the property reviewed all leases and investigated the lessees.  In purchasing the

property and continuing the lease with the Grow Adams Morgan Dispensary, the 2337 18th

Property Owner was fully aware that the property was being used by an unlicensed cannabis

dispensary to sell illegal cannabis.

218.    The Grow Adams Morgan Dispensary claimed (as do most unlicensed cannabis dispensaries) that it is (was) legal because it is a "gifting" shop that gives away cannabis products. Its ad on Mrweednearme.com states: "Grow Club DC is a gifting store, cannabis and hydroponic store, we have been here since 2015, check us out mention this posting and get a free pre-roll."

219.    Although the Grow Adams Morgan dispensary is now closed, until last month it had an active internet presence, using social media (Instagram (@growclubdc), Facebook), paid internet guides to illegal dispensaries (Yelp), various other internet postings and ads (Foursquare.com, Google Search, MapQuest) and its own website (www.growclubdc.com).  It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

220.    On August 7, 2024, ABCB issued its Order to Cease and Desist against the Grow Adams Morgan Dispensary, the owner of that unlicensed dispensary, and the Other 2337 18th Property Owner, ordering them "to cease the illegal purchase, sale, exchange, delivery, or other any other form of commercial transaction involving cannabis immediately, including testing services."

221.    The August 7th Cease and Desist Order details that on May 2, 2024, the ABCA's Supervisory Investigator (SI) Jason Peru and other District agencies inspected the Grow Adams Morgan Dispensary and during this inspection  the dispensary "was found to have engaged in illegal cannabis activity." In response, ABCA sent a warning letter on May 2, 2024 to the property owner and the dispensary advising of violations of the DC Code regarding the illegal sale and distribution of cannabis.

222.    The August 7th Cease and Desist Order further details that on July 26, 2024, SI Jason Peru returned to the dispensary and upon further inspection determined the dispensary was

continuing to engage in commercial cannabis activity.  Based on the evidence gathered, ABCB determined that the Grow Adams Morgan Dispensary, its owner, and the Other 2337 18th Property Owner (i) operate or allowed an unlicensed established to operate  and "engage in illegal commence related to cannabis", (ii) offers an unlicensed cannabis testing service, and (ii illegally possesses cannabis in violation of  §7-1671.08(A).

223.    The August 7th Cease and Desist Order "further notes that the sale and distribution of illegal cannabis immediately threatens the health and safety of the public because unregulated product because unregulated product may contain inappropriate and harmful substances (e.g., pesticides, other narcotics).  In addition, unlicensed businesses are at risk of selling to persons that should not have access to cannabis, such as minors."

224.    As a result of the August 7th Cease and Desist Order, the Grow Adams Morgan Dispensary has closed, but this does not address the responsibility of the unlicensed dispensary, the 2337 18th Property Owner or the Other 2337 18th Property Owner for the harm they caused the legal cannabis market and ALCE.

225.    The legal cannabis market in DC and ALCE members suffered lost commercial sales that were instead made by Grow Adams Morgan Dispensary.  The 2337 18th Property Owner materially contributed to the Grow Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 2337 18th Property Owner in leasing its commercial space to the Grow Adams Morgan Dispensary (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by  Grow Adams Morgan Dispensary would not have been made.

226.     The 2337 18th Property Owner's profits from the lease of this commercial space to the illegal dispensary in the 12 months before the Cease and Desist Order is $62,280, and the Other 2337 18th Property Owner's profits for the 1 year/6 months it leased to the illegal dispensary is $93,420 (based on the applicable lease rate for this space multiplied by the square footage multiplied by time period of the lease).

227.     The Grow Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) for the past 2 years/6 months are conservatively estimated at $1,557,000 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $389,250 (equaling 25% of estimated sales).

### P.     2118 18TH PROPERTY OWNER – PEACE ADAMS MORGAN DISPENSARY AND VIPEACE ADAMS MORGAN DISPENSARY

228.     Defendant 2118 FSD Property LLC ("2118 18th Property Owner") leases its commercial space in the building at 2118 18th Street NW, Washington, DC 20009 to  two unlicensed and illegal cannabis dispensaries, 1000 sf  on the 1st Floor to the Peace Adams Morgan Dispensary, and 1000 sf on the Lower Level to VIPeace Adams Morgan Dispensary. This property is located within ¼-mile of a middle or high school making it illegal to sell any electronic smoking device. According to Costar, the rent for this commercial space was estimated to be $43-$53/sf; ALCE uses $43/sf for calculating the property owner's profits on the Lower Level, and $53/sf for calculating the property owner's profits on the 1st Floor as the most likely rates under the circumstance of each lease being used for legal activities.

229.     The 2118 18th Property Owner intentionally leased its commercial space with complete knowledge that this commercial space would be used for the sale of illegal cannabis as is evident

by the fact that both its 1st Floor and Lower Level are leased to separate unlicensed dispensaries. Out in front of the building is an A-frame sign stating that both dispensaries are I-71 compliant.

230.    The 2118 18th Property Owner leased its commercial space to VIPeace Adams Morgan Dispensary beginning on January 1, 2022 (3 years ago) when it received a general business license (400322803023) and continues to lease to this illegal dispensary. The property owner leased to Peace Adams Morgan Dispensary on February 2, 2022 when it received a general business license (400322803909) but on November 26, 2024, that dispensary was closed by ABCA and the MPD for violation of an earlier Cease and Desist Order, apparently ending that lease after 2 years/10 months.

231.    Neither the Peace Adams Morgan Dispensary nor the VIPeace Adams Morgan Dispensary ever had a cannabis retailer license issued by ABCA. At all times they has operated as illegal dispensaries selling illegal cannabis. None of the cannabis sold by either dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia. Consequently all cannabis sold from this location was illegal and purchased in interstate commerce by the illegal dispensaries from unknown illegal sources in other states or foreign countries. Additionally, both illegal dispensaries relied on the use in interstate commerce of ATM and POS debit and credit card processing to sell illegal cannabis in DC.

232.    The 2118 18th Property Owner never investigated or conducted any meaningful due diligence review of either dispensary (which are owned by the same person) before entering into a lease because it knew that both dispensaries were involved in the sale of illegal cannabis and expected it to generate significant revenues from illegal cannabis sales. Neither dispensary was hiding from the property owner the nature of its business. The primary purpose of the dispensaries was to sell cannabis illegally and the 2118 18th  Property Owner understood this and

73

never took any other action to determine if the dispensary had any legitimate (legal) business purpose. Additionally, the property owner allowed the illegal dispensaries to use the address (and photos) of the property to be published in interstate commerce as the location source of illegal cannabis.

233. The Peace Adams Morgan Dispensary falsely promotes itself and advertises its cannabis products in interstate commerce as being legal in DC through its use of social media (Instagram (@grindstoneuniveral)), X, Facebook, PIN), paid internet guides to illegal dispensaries (Toker's Guide, Yelp, Gentlemantoker.com, TrustedBud, AllBud, Greenstate.com), various internet postings and ads (Google Search, MapQuest, Urbanaroma.com, etc.). The Peace Adams Morgan Dispensary on numerous internet postings (and in the store and on street signs) and on its website that it is legal in DC for it to "Gift" cannabis because it is I-71 complaint:

> Rated DC's best weed shop, Peace in the Air still aims to be the home of the best boutique I-71 complaint recreational weed in DC. The customer is our top priority. Our cannabis dispensary products are always top of the line and with your purchase of our music we will gift it to you.
>
> Peace in the Airis the best place in Washington, DC to get weed. We provide safe delivery throughout Maryland and Northern Virginia. Our delivery service ensures you will have the best cannabis at your door.

234. On its website the Peace Adams Morgan Dispensary provides its menu of available cannabis products for ordering online for store pick-up or for delivery in interstate commerce by the dispensary. This menu includes flower, zips, cartridges, concentrates, edibles, pre-rolls and CBD. None of these products are legal in the District of Columbia just as Peace in the Air is itself unlicensed and illegal but it promotes itself and its products as being legal to gain an unfair competitive advantage, and to give false assurances to its customers.

235.    On January 30, 2024, Plaintiff investigated the Peace Adams Morgan Dispensary and observed the display and sale of cannabis products.

236.    The VIPeace Adams Morgan Dispensary maintains a separate internet presence from the Peace Adams Morgan Dispensary above it. The VIPeace Adams Morgan Dispensary also promotes itself and advertises its cannabis products in interstate commerce as being legal, and it has its own Instagram (@vipeace) account and separate ads in Toker's Guide, Yelp, TrustedBud, MapQuest, Google Search , etc. and it also has its own separate website (www.peacebasement.com). And like its affiliated dispensary, VIPeace Adams Morgan Dispensary asserts on its website that it is legal because it is "I-71" compliant.

237.    On its website the VIPeace Adams Morgan Dispensary provides its menu of available cannabis products for ordering online for store pick-up or for delivery in interstate commerce by the dispensary.  This menu includes infused drinks, magic mushrooms, flower, zips, cartridges, concentrates, edibles, pre-rolls, and CBD.  None of these products are legal in the District of Columbia just as VIPeace is itself unlicensed and illegal, but it promotes itself and its products as being legal to gain an unfair competitive advantage, and to give false assurances to its customers.

238.    On February 7, 2024, Plaintiff investigated the VIPeace Adams Morgan Dispensary and observed the display and sale of illegal cannabis products.

239.    On August 7, 2024, ABCB issued its Order to Cease and Desist against Darryl Dawson, the owner of VIPeace/Peace in the Air,  the two dispensaries at 2118 18th Street NW, Washington, DC (i.e. VIPeace Adams Morgan Dispensary and Peace Adams Morgan Dispensary), and the 2118 18th Property Owner, ordering them "to cease the illegal purchase, sale, exchange, delivery, or other any other form of commercial transaction involving cannabis immediately."

240.    The August 7th Cease and Desist Order details that on May 2, 2024, the ABCA's

Supervisory Investigator (SI) Jason Peru and other District agencies inspected the Dreams

Adams Morgan Dispensary and during this inspection  the dispensary "to have engaged in illegal

cannabis activity." In response, ABCA sent a warning letter on May 2, 2024 to the property

owner and the dispensaries advising of violations of the DC Code regarding the illegal sale and

distribution of cannabis.

241.    The August 7th Cease and Desist Order further details that on July 26, 2024, SI Jason

Peru returned to the dispensary and upon further inspection determined (i) the dispensary was

continuing to sell cannabis illegally while operating in the basement and first floor of the

property, and (ii) the packaging of cannabis products contain misrepresentations that show the

products "illegally, misleadingly, and falsely claim compliance with I-71, the District ballot

initiative decriminalizing small amounts of cannabis".  Based on the evidence gathered, ABCB

determined that Mr. Dawson, the two unlicensed dispensaries and the 2118 18th Property Owner

(i) operate or allowed an unlicensed established to operate  and "engage in the illegal sale and

distribution of cannabis", (ii) the  amount and manner in which the cannabis is displayed for sale

"shows that the business engages in the commercial distribution of cannabis at 2118 18th Street

N.W., without a license issued by ABCA" at this location, and (iii) "the unlicensed establishment

is not in compliance with §48-904.1(a)(1) as it advertises cannabis for sale and possess more

cannabis than permitted by law and illegally claims compliance with Initiative 71."

242.    The August 7th Cease and Desist Order "further notes that the sale and distribution of

illegal cannabis immediately threatens the health and safety of the public because unregulated

product because unregulated product may contain inappropriate and harmful substances (e.g.,

pesticides, other narcotics). In addition, unlicensed businesses are at risk of selling to persons that should not have access to cannabis, such as minors."

243.    On November 26, 2024, ABCA and the Metropolitan Police Department (MPD) implemented a closure order "in response to their continued operation as an unlicensed cannabis retailer in violation of the Cease and Desist Order".

244.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Peace Adams Morgan Dispensary and VIPeace Adams Morgan Dispensary. The 2118 18th Property Owner materially contributed to the VIPeace/Peace Adams Morgan Dispensaries' deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers. Without the material participation of the 2118 18th Property Owner in leasing its commercial space to the VIPeace/Peace Adams Morgan Dispensaries, the illegal cannabis sales by these illegal dispensaries would not have been made.

245.    The 2118 18th Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 2 years/10 months for the 1st Floor ($150,166) and the last 3 years for the Lower Level ($129,000) is $279,166 (based on the applicable lease rate for this space multiplied by the square footage multiplied by time period of the lease)2 years/3 months).

246.    The Peace Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/10 months ($1,501,666), and the VIPeace Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years ($1,290,000) are conservatively estimated at $2,791,666 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales). This level of sales, minus

the cost of goods (using a reasonable business assumption of 40%), rent and other expenses

would result in estimated profits of $375,416 for the Peace Adams Morgan Dispensary and

$322,000 for the VIPeace Adams Morgan Dispensary (equaling 25% of estimated sales).

      **Q.    1770 COLUMBIA PROPERTY OWNER – HEMP ADAMS MORGAN DISPENSARY**

247.    Defendant 1770 Columbia Road N.W. Associates LLC ("1770 Columbia Property

Owner") leased 1400 sf of commercial space to Defendant Capitol Hemp LLC ("Hemp Adams

Morgan Dispensary") who operates an illegal dispensary at that location.  According to Costar,

the rent rate for this space is $48.46/sf and the move-in date under the lease was June 15, 2015

(as confirmed on the dispensary's website); ALCE uses this rate to calculate the property owner's

profits.

248.    The Hemp Adams Morgan Dispensary never had a cannabis retailer license issued by

ABCA.  At all times it has operated as an illegal dispensary selling illegal cannabis. None of the

cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or

manufacturers in the District of Columbia.  Consequently all cannabis sold from this location

was illegal and was purchased in interstate commerce by the Hemp Adams Morgan dispensary

from unknown illegal sources in other states or foreign countries.  Additionally, the Hemp Adams

Morgan relies on the use in interstate commerce of a POS debit and credit card processing

system to sell illegal cannabis in DC.

249.    The 1770 Columbia Property Owner never investigated or conducted any meaningful due

diligence review of the Hemp Adams Morgan Dispensary before entering into a lease because it

knew that this dispensary was involved in the sale of illegal cannabis. The dispensary was not

hiding from the property owner the nature of its business.  The primary purpose of the dispensary

is to sell cannabis illegally and the 1770 Columbia Property Owner understood this and never

took any other action to determine if the dispensary had any legitimate (legal) business purpose. Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

250.    The Hemp Adams Morgan Dispensary falsely promotes itself and advertises in interstate commerce through its use of social media (Instagram(@capitolhemp, X(@capitolhemp)), paid internet guides to illegal dispensaries (Yelp, Foursqare.com), etc.), various internet postings and ads (Google Search), and its own website (www.capitolhemp.com).  The Hemp Adams Morgan Dispensary misrepresents that it is operating legally under DC law as a result of Initiative 71 and by extension its cannabis products (including hemp derived products) are also legal.

> Thanks to Initiative 71 Capitol Hemp doesn't operate in any "grey" areas of the law.  It is  perfectly legal to come into the store to buy anything legal from CBD products to bongs.

251.    Notwithstanding the Hemp Adams Morgan Dispensary's false claims, ABCA has repeatedly found claims of being I-71 compliant to be a violation of DC Code §7-1671.06(c-1). Such claims and claims that its cannabis products are also legal constitute false advertising and are intended to undercut licensed cultivators, manufactures and retailers in DC.

252.    The website contains a menu of the cannabis products available from the Hemp Adams Morgan Dispensary, including flower, edibles, CBD, Delta 8 THC, Delta 9 THC, and vapes. None of these products are subject to the regulation and supervision of ABCA and are not legally available for sale under DC laws.  The Hemp Adams Morgan Dispensary uses the internet to falsely promote itself and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

253.    On February 13, 2024, Plaintiff investigated the Hemp Adams Morgan Dispensary and observed the display and sale of illegal cannabis products.

254.    On June 13, 2024, ABCA issued a warning letter to the 1770 Columbia Property Owner stating that ABCA's investigator on June 13,2024, had "observed unlicensed and illegal cannabis operations in violation of Chapter 16B of title 7 of the D.C. Official Code and D.C. Official Code §48-904.01", including "Illegally selling cannabis or knowingly engaging or attempting to engage in the purchase, sale, exchange, or delivery cannabis (D.C. Official Code §§7-1671.08(f), 48-904.01(a)(1)(B))"…and "Illegally displaying advertising or signs related to the price of cannabis; displaying cannabis advertisements on the exterior of a window or interior of any door; or making cannabis; or making cannabis advertisements visible to persons on public or private space outside the premises (D.C. Official Code §7-1671.06b( e)."

255.    ABCA's June 13, 2024 letter concluded by stating:

> Please note that the issuance of this warning letter does not protect you from prosecution by other federal or District law enforcement agencies or from any lawsuits that may be filed by private actors against you.  Therefore, you are putting yourself at risk if you continue to engage in this illegal conduct or continue to allow it to occur.

256.    On November 17, 2024, Plaintiff again investigated the Hemp Adams Morgan Dispensary and observed the display and sale of illegal cannabis.

257.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Hemp Adams Morgan Dispensary.  The 1770 Columbia Property Owner materially contributed to the Hemp Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1770 Columbia Property Owner in leasing its commercial space to the Hemp Adams Morgan Dispensary (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by Hemp Adams Morgan Dispensary would not have been made.

258.    The 1770 Columbia Property Owner's lease revenues/profits from the lease of this

commercial space to illegal dispensaries in the past 3 years is $203,532 (based on the applicable

lease rate for this space multiplied by the square footage multiplied by 3 years).

259.    The Hemp Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal

market) over the past 3 years are conservatively estimated at $2,035,320 (based on the

reasonable business assumption that lease costs approximately equal 10% of retail sales).  This

level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and

other expenses would result in estimated profits of $508,830 (equaling 25% of estimated sales).

**R.    1768 COLUMBIA PROPERTY OWNER – VIBEZ ADAMS MORGAN
        DISPENSARY**

260.    Defendant 1768 Columbia Road N.W. Associates LLC ("1768 Columbia Property

Owner") leased 1250 sf of commercial space to Defendant Vibex Print LLC ("Vibez Adams

Morgan Dispensary") who operates an unlicensed and illegal cannabis dispensary at that

location. According to Costar, the rent for this commercial space under the lease with the Vibez

Adams Morgan Dispensary was a starting rate back to the move-in date of July 1, 2022 (2

years/6months ago) of $31.10/sf; ALCE uses this rate to calculate the property owner's profits.

261.    The 1768 Columbia Property Owner intentionally leased its commercial space for the

sale of illegal cannabis.  It is no coincidence that the 1768 Columbia Property Owner leases to an

unlicensed cannabis dispensary is next door to another property owned by the 1770 Columbia

Property Owner that leases to another, different unlicensed cannabis dispensary.  The 1768

Columbia Property Owner and the 1770 Columbia Property Owner are under common

ownership.

262.    The  Vibez Adams Morgan Dispensary never had a cannabis retailer license issued by

ABCA.  At all times it has operated as an unlicensed, illegal dispensary selling illegal cannabis.

None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia.  Consequently, all cannabis sold from this location was illegal and purchased in interstate commerce by the Vibez Adams Morgan Dispensary from unknown illegal sources in other states or foreign countries.  Additionally, the Vibez Adams Morgan Dispensary relies on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

263.    The 1768 Columbia Property Owner never investigated or conducted any meaningful due diligence review of the Vibez Adams Morgan Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis and expected it to generate significant revenues. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of the dispensary is to sell cannabis illegally and the 1768 Columbia Property Owner understood this and never took any other action to determine if the dispensary had any legitimate (legal) business purpose.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

264.    The Vibez Adams Morgan Dispensary falsely promotes and advertises in interstate commerce itself as a legally licensed cannabis dispensary that sells cannabis products that are lawful under the laws of the District of Columbia. On its website (www.vibezdc.com) Vibex Adams Morgan Dispensary claims to be a medical cannabis dispensary and I-71 Compliant with cannabis products that are "premium quality medicine":

> At Vibez, you can find over 120 of the best indica, sativa and hybrid strains.
> We strive to only offer the best and premium cannabis products such as CBD,
> cannabis concentrates, cannabis vapes, premium flower, and cannabis edibles.
> Stop by our 24/7 cannabis dispensary to speak to our expert staff about medical
> or recreational cannabis.
>                              ***

> We are a compassionate and knowledgeable Initiative 71 complaint dispensary with the intent to provide our community with premium quality medicine. Our staff is knowledgeable, very professional & helpful.  We are on a mission to enhance safe access to legal cannabis, educate people about cannabis as a tool for wellness and drive smart cannabis policies.

265.    The false claims by Vibez Adams Morgan Dispensary regarding its legality and the legality of the cannabis products it sells are intended to harm the legal cannabis market in DC.

266.    The website of Vibez Adams Morgan Dispensary includes an expansive list of cannabis products (more than 120 items) including flower, vapes, concentrates, pre-rolls, topicals, and edibles. None of these cannabis products are legal for sale in the District of Columbia.

267.    The Vibez Adams Morgan Dispensary also uses social media (Instagram (@vibez_dc), Facebook (Vibes DC), and various internet posting and ads (Google Search, MapQuest, Threads.com, etc.) to further promote itself as a legal dispensary in DC with safe products that are approved for sale in DC.  None of which is true and its misrepresentations harm the legal cannabis market and ACLE. It uses the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

268.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Vibez Adams Morgan Dispensary.  The 1768 Columbia Property Owner materially contributed to the Vibez Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1768 Columbia Property Owner in leasing its commercial space to the Vibex Adams Morgan Dispensary (and allowing the promotion and advertising of the image and address of the property), the illegal cannabis sales by Vibez Adams Morgan Dispensary would not have been made.

269.    The 1768 Columbia Property Owner's lease revenues/profits from the lease of this commercial space to illegal dispensaries in the past 2 years/6 months is $97,187 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 2 years/6 months).

270.    The Vibez Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 2 years/6 months are conservatively estimated at $971,187 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $242,968 (equaling 25% of estimated sales).

**COUNT I – LIABILITY FOR VIOLATION OF LANHAM ACT FOR UNFAIR COMPETITION**

271.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 270 above.

272.    Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) provides:

(a) Civil Action:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or in any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

273.    Defendants 1314 9th Street LLC t/a Chill Tobacco ("Chill Downtown Dispensary"), TG

Cigars Inc. and Happy Bud Wholesaler LLC ("Happy Downtown Dispensary"), Za Partners LLC

t/a Granny Za's ("Granny Chinatown Dispensary" and "Granny Adams Morgan Dispensary"),

Press Release Ventures LLC t/a Kush Bar ("Kush Downtown Dispensary"), Gas Monkey LLC

t/a Monko ("Monko Mt Vernon Square Dispensary"), M. J. Jennings Enterprise LLC t/a Relva

("Relva Mt Vernon Square Dispensary"), Khossrow B. Fahimi t/a Shiva Electronic ("Shiva

Adams Morgan Dispensary"), Kaliiva Corp. ("Kaliiva Adams Morgan Dispensary"), La La Juice

Corp. t/a Apple Dream ("Apple Mt Pleasant Dispensary" and "Apple Adams Morgan

Dispensary"), G La La Juice Corp. t/a Apple Dream ("Apple Park View Dispensary"), Dreams

LLC ("Dreams Adams Morgan Dispensary"), Grow Club LLC ("Grow Adams Morgan

Dispensary"), Grindstone Universal LLC ("Peace Adams Morgan Dispensary"), Peace In The

Air LLC ("VIPeace Adams Morgan Dispensary"), Capitol Hemp LLC ("Hemp Adams Morgan

Dispensary"), Vibez Print LLC ("Vibez Adams Morgan Dispensary") (hereinafter collectively

referred to as "Eighteen Illegal Dispensary-Defendants")[5] each engaged in unfair competition

against the legally licensed cannabis entities in violation of Section 43(a)(1)(A) of the Lanham

Act.

274.    Each of the Eighteen Illegal Dispensary-Defendants falsely claim or represent in

interstate commerce that the "origin" of the cannabis it sells (or sold) is cultivated or

manufactured in the District of Columbia by licensed cultivators and/or manufactured because

those licensees are the only source of legal cannabis under the laws of the District of Columbia.

None of the cannabis sold by any of the Eighteen Illegal Dispensaries had as its "origin" any of

---

[5] Technically there are only seventeen Illegal Dispensary-Defendants since La La Juice Corp. and Za Partners LLC
each operate two illegal dispensaries, but Happy Downtown Dispensary is operated by two defendants. All of these
illegal dispensaries are described and explained separately in the Complaint.

the licensed cultivators and/or manufacturers in the District of Columbia. The false or misleading representations as to the "origin" of the cannabis sold by the Sixteen Illegal Dispensary-Defendants violate Section 43(a)(1) of the Lanham Act.

275.    Each of the Eighteen Illegal Dispensary-Defendants falsely describe or give false or misleading representations in interstate commerce as to the cannabis they sell (sold) "to cause confusion, or to cause mistake, or to deceive" consumers "as to the origin, sponsorship, or approval" of the District of Columbia Government (through ABCA) in violation of Section 43(a)(1)(A) of the Lanham Act.

276.    Each of the Eighteen Illegal Dispensary-Defendants falsely describe or make false or misleading descriptions of facts or false or misleading representations of fact in interstate commerce as to their own legal status to sell cannabis in the District of Columbia "to cause confusion, or to cause mistake, or to deceive" consumers as to the unlicensed dispensary's "affiliation, connection, or association … as to the origin, sponsorship, or approval of his or her goods, services, or commercial  activities" by licensed dispensaries in violation of Section 43(a)(1)(A) of the Lanham Act.

277.    Each of the Eighteen Illegal Dispensary-Defendants operate or operated in the past three years an illegal cannabis dispensary selling illegal cannabis flower and other cannabis products while simultaneously misrepresenting to customers (both in person and on the internet) that they were legally licensed or legally authorized in the District of Columbia to sell cannabis.  These misrepresentations were made to deceive consumers to gain an unfair competitive advantage over licensed dispensaries who sold legal cannabis from licensed cultivators and manufacturers.

278.    Each of the Eighteen Illegal Dispensary-Defendants used the internet to deceive consumers in interstate commerce as to their legal status by claiming they were licensed or "i-71

compliant" or otherwise legally authorized to operate as a cannabis shop or dispensary and to sell or "gift" cannabis to consumers in accordance with the laws of the District of Columbia.

279.    Without such misrepresentations and deceptions aimed at consumers, none of the Eighteen Illegal Dispensary-Defendants would have been able to make inroads into the cannabis market in the District of Columbia.

280.    Each of the Eighteen Illegal Dispensary-Defendants deceived consumers (both in person and on the internet) by representing that the cannabis flower and other cannabis products they sold were legal in the District of Columbia.

281.    None of the cannabis flower and other cannabis products sold by the Eighteen Illegal Dispensary-Defendants in their stores, listed on their websites, or sold online was legal under the laws of the District of Columbia.

282.    Each of the Eighteen Illegal Dispensary-Defendants sells illegal cannabis that is deceptively packaged as a premium product to deceive consumers to gain an unfair competitive advantage over legal dispensaries who are prohibited from purchasing and selling illegal cannabis.

283.    Each of the Eighteen Illegal Dispensary-Defendants deceived consumers into purchasing cannabis that is illegal under the laws of the District of Columbia.

284.    Some of the Eighteen Illegal Dispensary-Defendants also sell "magic mushrooms" (the common street name for the "psilocybin" found in entheogenic plants and fungi) and magic mushroom products like chocolates as a substitutable product for cannabis.  These dispensaries misrepresent the magic mushrooms and products they sell as being legal in DC and only available as premium products available at certain (albeit illegal) dispensaries.  These

representations are false and are intended to deceive consumers to encourage their shopping with illegal dispensaries and divert sales from the legal market represented by ALCE.

285.    Some of the Illegal Dispensary-Defendants also sell illegal flavored tobacco products, including nicotine vapes (*e.g.,* Chill Downtown Dispensary, Shiva Adams Morgan Dispensary, Apple Mt Pleasant Dispensary, Apple Adams Morgan Dispensary, Apple Park View Dispensary, Dreams Adams Morgan Dispensary, and Friends Capitol Hill Dispensary), and/or "magic" mushrooms as complementary "buzz" products that consumers may view as substitutable for cannabis.  By offering an additional product mix not available from licensed cannabis dispensaries , these unlicensed and illegal dispensaries seek to gain an unfair competitive advantage.

286.    At least eleven of  the Illegal Dispensary-Defendants (Guys U Street Dispensary, AA Adams Morgan Dispensary, AA Truxton Circle Dispensary, AA U Street Dispensary, AA  H Street Dispensary, Giving H Street Dispensary, Flowerz Capitol Hill Dispensary, NKA Capitol Hill Dispensary, Euphoria Capitol Hill Dispensary, Bud Capitol Hill Dispensary, and Friends Capitol Hill Dispensary) also sell electronic smoking devices for  cannabis within ¼-mile of middle or high schools without regard to the prohibition of such sales under DC's Flavored Tobacco Prohibition Amendment Act of 2021.  These illegal dispensaries do so to deceive or confuse consumers as to the legality of the products they sell.

287.    Commercial sales of illegal cannabis flower and other cannabis products by these illegal dispensaries competed with commercial sales of the legal cannabis by legal, licensed dispensaries in the District of Columbia and diverted commercial sales from the legal cannabis market, causing commercial injury to licensed cultivators, manufacturers and dispensaries represented by ALCE.

288.    In accordance with 15 U.S.C. §1117(a), Plaintiff seeks equitable relief equal to disgorgement of the profits of the Eighteen Illegal Dispensary-Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for unfair competition.

## COUNT II – CONTRIBUTORY LIABILITY FOR VIOLATION OF LANHAM ACT FOR UNFAIR COMPETITION

289.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 288 above.

290.    Defendants 1314 ½ Inc. ("1314 9th Property Owner"), Welch Family Limited Partnership Eleven, LP ("1118 9th Property Owner"), Welch Family Limited Partnership Four, LP ("311 H Property Owner"), Thomas A. Hart ("1219 11th Property Owner"), Eddington Hamm Moy, Cynthia Pat Goon Okoye -Successor Trustee under The Wellington Hamm Moy Trustee, Beatricia Chu Goon -Trustee under The Arhtur and Beatricia Goon Trust, Diana Chu Moy, and Gallery Row Holdings LLC ("515 H Property Owner"), Jessica L. Racine-White and Jessica L. Racine-White Trustee ("1664 Columbia Property Owner" and "2438 18th Property Owner"), 448 K Street LLC ("444 K Property Owner"), Dixie Barbara Chinn ("1731 Columbia Property Owner"), Georgia Mixed Use Building LLC ("3003 Georgia Property Owner"), Blue Nile Realty LLC ("3106 Mt. Pleasant Property Owner"), 1748 Columbia Road LLC ("1748 Columbia Property Owner"), Soleiman Askarinam ("2335 18th Property Owner"), Jonathan Askarinam Trustee ("Other 2335 18th Property Owner"), 2337 18th St LLC ("2337 18th Property Owner"), 2337 Bond St Equities LLC ("Other 2337 18th Property Owner"), 2118 FSD Property LLC ("2118 18th Property Owner"), 1770 Columbia Road N.W. Associates LLC ("1770 Columbia

Property Owner"), and 1768 Columbia Road N.W. Associates LLC (1768 Columbia Property Owner") (hereinafter collectively referred to as "Nineteen Property Owner-Defendants") are each individually contributorily liable for violation of Section 43(a)(1)(A) of the Lanham Act for unfair competition.

291.    Each of the Nineteen Property Owner-Defendants leased commercial space to unlicensed cannabis dispensaries which allowed such illegal dispensaries to falsely claim or represent that they were legal or licensed cannabis dispensaries in a manner "likely to cause confusion, or to cause mistake, or to deceive" consumers as to the legal status in the District of Columbia of the unlicensed dispensaries in violation of Section 43(a)(1)(A) of the Lanham Act.

292.    Each of the Nineteen Property Owner-Defendants leased commercial space to unlicensed cannabis dispensaries which allowed the use of the commercial space and the address of such commercial space to be used to sell illegal cannabis which was "likely to cause confusion, or to cause mistake, or to deceive" consumers  "as to the origin, sponsorship, or approval of" this illegal cannabis, or the legality of the other related services offered by unlicensed dispensaries, including access to credit or debit cards, and shipping and delivery of illegal cannabis in interstate commerce.

293.    Each of the Nineteen Property Owner-Defendants materially participated in the establishment of operations of one or more of the Eighteen Illegal Dispensary-Defendants by leasing commercial space to them for the sale of illegal cannabis. These defendants materially participated with the illegal dispensary-defendants in violations of Section 43(a)(1)(A).

294.    Each of the Nineteen Property Owner-Defendants leased space in commercial properties they owned to unlicensed and illegal cannabis dispensaries.

295.    Each of the Nineteen Property Owner-Defendants had knowledge of or had reason to know that the Eighteen Illegal Dispensary-Defendants were unlicensed and sold illegal cannabis flower and other cannabis products, and in several instances, illegal flavored tobacco products and/or "magic" mushrooms, at their respective leased locations to gain an unfair competitive advantage.

296.    Eleven of the commercial properties leased to the Eighteen Illegal Dispensary-Defendants by the Nineteen Property Owner-Defendants are located within ¼-mile of a middle or high school in DC where the sale of all electronic smoking devices are prohibited under DC law.  Those Property Owner-Defendants had knowledge of or had reason to know that the Illegal Dispensary-Defendants that they leased to sold prohibited vapes and other illegal cannabis and nicotine products to deceive or confuse consumers.

297.    Each of the Nineteen Property Owner-Defendants was aware (or should have been aware) that consumers were deceived as to the legal status of the illegal dispensary-defendants, and the legality of the cannabis and, in certain cases, flavored tobacco and/or "magic" mushrooms, sold at these illegal dispensaries.

298.    Each of the Nineteen Property Owner-Defendants materially contributed to the deception and/or confusion of consumers by providing one or more illegal dispensaries with the appearance of legitimacy by leasing commercial property to the illegal dispensary.

299.    None of the Nineteen Property Owner-Defendants required any of the illegal dispensaries to become a legal, licensed dispensary, and only sell cannabis that was legal under the laws of the District of Columbia.

300.    "Willful blindness" of any of the Nineteen Property Owner-Defendants does not excuse their liability for violation of the Lanham Act for contributory unfair competition.

301.    The actions of each of these Nineteen Property Owner-Defendants caused injury to the legal cannabis market represented by ALCE  in the form of commercial cannabis sales diverted from the legal market to the illegal market.  Without the participation of the Nineteen Property Owner-Defendants, the illegal dispensaries would not have been able to operate and sell illegal cannabis flower and other cannabis products.

302.    Each of the Nineteen Property Owner-Defendants acted as competitors to the legal cannabis market by their actions in leasing commercial space to illegal dispensaries to compete with the legal market for cannabis sales.

303.    The lease payments received by each of the Nineteen Property Owner-Defendants was paid with revenues from the commercial sale of illegal cannabis diverted from the legal cannabis market in DC.

304.    Where lease payments to a Property Owner-Defendant included a percentage of revenues from illegal cannabis sales, this additional direct participation indicates an even closer involvement of the property owner as a partner in the illegal sale and distribution of illegal cannabis.

305.    In accordance with 15 U.S.C. §1117(a), Plaintiff  seeks equitable relief with the disgorgement of the profits of the Nineteen Property Owner-Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for unfair competition.

**COUNT III – LIABILITY FOR VIOLATION OF LANHAM ACT FOR FALSE ADVERTISING AND FALSE PROMOTION**

306.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 305 above.

307.    Each of the Eighteen Illegal Dispensary-Defendants engaged in false advertising competition in violation of Section 43(a)(1)(B) of the Lanham Act.

308.    Each of the Eighteen Illegal Dispensary-Defendants falsely describe or give false or misleading descriptions of fact or misleading representations of fact in interstate commerce as to the cannabis they sell.  Each make such misrepresentations on the internet regarding the nature, characteristics, qualities, or geographic origin of the cannabis they sell in violation of Section 43(a)(1)(B) of the Lanham Act.

309.    Each of the Eighteen Illegal Dispensary-Defendants falsely describes or gives false or misleading descriptions of fact or misleading representations of fact as to the cannabis sold by legal, licensed dispensaries in violation of Section 43(a)(1)(B) of the Lanham Act.

310.    Each of the Eighteen Illegal Dispensary-Defendants used the internet to falsely advertise and promote themselves in interstate commerce as legal dispensaries in the District of Columbia that sold only legal cannabis flower and other cannabis products. These claims along with misleading packaging of  illegal cannabis was intended to confuse and deceive consumers.

311.    Each  of the Eighteen Illegal Dispensary-Defendants used the internet to falsely advertise and promote illegal cannabis and illegal dispensaries in interstate commerce.

312.    Each of the Eighteen Illegal Dispensary-Defendants advertises and promotes in interstate commerce the sale of some type of illegal cannabis, e.g., CBD, THC, hemp-derived, Delta 8, etc.

313.    Advertising claims by the Eighteen Illegal Dispensary-Defendants that any of these cannabis types are legally sold by an unlicensed retailer in DC are intended to confuse or deceive consumers.

314.    Each of the Eighteen Illegal Dispensary-Defendants sells some nationally marketed cannabis brands as a premium product concealing the fact that all such cannabis products produced outside of the District of Columbia, purchased, and transported in interstate commerce by the illegal dispensary-defendants, and are illegal in DC;

315.    Many of the nationally marketed cannabis brands are deceptively packaged with inaccurate potency statements, misrepresent the safety of the products, fail state the lack of third-party testing or governmental oversight or fail to give any information as to the actual cultivator or manufacturer.  The Eighteen Illegal Dispensary-Defendants withhold this information to deceive or confuse consumers about the cannabis they are selling illegally.

316.    Some of the Eighteen Illegal Dispensary-Defendants also sell cannabis deceptively packaged to look like non-cannabis, national consumer brands to confuse or deceive consumers and gain a competitive advantage over the legal market, e.g., Nerd Robes, Dum-Dums, Skittles, Chips Ahoy, Milky Way, Snickers, Dean & Deluca, Doritos, etc.

317.    Many of the Eighteen Illegal Dispensary-Defendants offer to deliver illegal cannabis products in interstate commerce outside of the District of Columbia into Maryland and Virginia and falsely represent such delivery options as being safe and legal.  Legal dispensaries in the District of Columbia are prohibited from making deliveries in interstate commerce outside of the District of Columbia.

318.    Some of the Eighteen Illegal Dispensary-Defendants falsely advertise and promote the sale in interstate commerce on their websites and in their stores of "magic" mushrooms that they also represent as being legal in DC for them to sell. Legal, licensed cannabis dispensaries in the District of Columbia are prohibited from selling 'magic" mushrooms which are illegal for everyone to sell in the District of Columbia.

319.    Some of the Illegal Dispensary-Defendants also sell illegal flavored tobacco products that are national brands, including nicotine vapes, that are heavily advertised in interstate commerce. The inclusion of these brands in the product mix of an illegal dispensary help to promote the illegal dispensary/smoke shops in a manner intended to confuse or deceive consumers.

320.    Eleven of the Illegal Dispensary-Defendants also sell electronic smoking devices within ¼-mile of middle or high schools and seek to increase their sales by offering heavily advertised brands even though illegal in DC.

321.    Each of the Eighteen Illegal Dispensary-Defendants have (or had) an internet presence that they used in interstate commerce to confuse or deceive consumers about the illegal cannabis they advertised for sale.

322.    Each of the Eighteen Illegal Dispensary-Defendants has or had websites or use the internet to promote in interstate commerce the sale at their leased locations and online of illegal cannabis products that they falsely represented to be legal in the District of Columbia, laboratory tested and high quality.

323.    Each of the Eighteen Illegal Dispensary-Defendants falsely advertised and falsely promoted in interstate commerce claims intended to deceive consumers as to the legal status of the different cannabis products and the legal status of the unlicensed dispensary itself.

324.    Each of the Eighteen Illegal Dispensary-Defendants concealed from consumers the fact that they were not licensed by ABCA and used the internet to advertise in interstate commerce and promote itself as operating as a legal dispensary.

325.    None of the cannabis sold by any of the Eighteen Illegal Dispensary- Defendants can be legally sold by any retailer in DC, even licensed dispensaries are prohibited from selling such

products that are not cultivated and manufactured by licensed cultivators and manufacturers in DC in accordance with ABCA regulations.

326.    False claims as to the legality and nature of the illegal cannabis flower and other cannabis products falsely advertised and falsely promoted and sold in interstate commerce by the Eighteen Illegal Dispensary-Defendants reduced commercial sales in the legal cannabis market in the District of Columbia and caused damage to the licensed cultivator, manufacturers and dispensaries represented by ALCE.

327.    In accordance with 15 U.S.C. §1117(a), Plaintiff seeks equitable relief equal to disgorgement of the profits of the Eighteen Illegal Dispensary-Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary complete cessation of illegal cannabis sales) for violation of the Lanham Act for false advertising and false promotion.

**COUNT IV – CONTRIBUTORY LIABILITY FOR VIOLATION OF LANHAM ACT FOR FALSE ADVERTISING AND FALSE PROMOTION**

328.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 327 above.

329.    Each of the Nineteen Property Owner-Defendants is liable for violation of Section 43(a)(1)(B) of the Lanham Act for contributory false advertising and promotion.

330.    Each of the Nineteen Property Owner-Defendants leased commercial space to unlicensed cannabis dispensaries which allowed such illegal dispensaries to advertise and promote in interstate commerce their presence and the sale of illegal cannabis at that location which allowed the misrepresentation of the nature, characteristics, qualities, or geographic origin of the cannabis sold by the illegal dispensaries in violation of Section 43(a)(1)(B) of the Lanham Act.

331.    Each of the Nineteen Property Owner-Defendants also permitted their property to be used to advertise or promote in interstate commerce the sale of illegal cannabis in DC with signage on the property signaling they sold cannabis prominently displayed on the building and storefront windows, and photos of the building and signage posted on the internet, along with the address (as a location source for illegal cannabis) and directions to the property in violation of Section 43(a)(1)(B) of the Lanham Act.

332.    Each of the Nineteen Property Owner-Defendants had knowledge of or had reason to know that the Eighteen Illegal Dispensary-Defendants was advertising and promoting in interstate commerce the sale of illegal cannabis flower and other cannabis products sold from their leased premises.  These defendants materially participated in the illegal dispensary-defendants' violations of Section 43(a)(1)(B) of the Lanham Act.

333.    "Willful blindness" of these nineteen defendants does not excuse their liability for violation of the Lanham Act for contributory false advertising and false promotion.

334.    Each of the Nineteen Property Owner-Defendants signed (or was responsible for signing) leases with the Eighteen Illegal Dispensary-Defendants.  They entered into these leases with knowledge that the lease payments made to them would be based on the sale of illegal cannabis falsely advertised and promoted in interstate commerce by the eighteen illegal dispensary-defendants.

335.    Each of the Nineteen Property Owner-Defendants caused injury to the legal market by intentionally leasing to illegal dispensaries that they knew or should have known were selling illegal cannabis and diverting commercial sales from the legal cannabis market and causing damage to the licensed cultivators, manufacturers and dispensaries represented by ALCE.

336.    Each of the Nineteen Property Owner-Defendants had access to the leased premises that displayed illegal cannabis flower and other cannabis products that were being falsely advertised and promoted in interstate commerce with the support of these defendants. Without the knowing involvement and participation of these nineteen defendants, the illegal dispensaries would not have been able to operate by falsely advertising and promoting in interstate commerce the sale of illegal cannabis.

337.    None of the Nineteen Property Owner-Defendants as a condition of the lease or otherwise required the illegal dispensary to obtain a legal cannabis license or to refrain from ever selling illegal cannabis.

338.    None of the Nineteen Property Owner-Defendants ever took any action to cause the illegal dispensary to cease advertising and promoting the sale from their leased premises of illegal cannabis.

339.    In accordance with 15 U.S.C. §1117, Plaintiff seeks equitable relief equal to disgorgement of the Nineteen Property Owner-Defendants' profits for the harm they caused ALCE members and the legal cannabis market represented by ALCE from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date of the complete cessation of all illegal cannabis sales from the leased premises) for the violation of the Lanham Act for contributory false advertising and promotion.

**COUNT V – VIOLATION OF COMMON LAW IN THE DISTRICT OF COLUMBIA FOR UNFAIR COMPETITION**

340.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 339 above.

341.    Common law of Unfair Competition in the District of Columbia recognizes a party's liability to a competitor where the offending party used methods that were independently illegal or where the offending party used false advertising or deceptive packaging.

342.    Each of the Eighteen Illegal Dispensary-Defendants engaged in unfair competition by: (i) selling of cannabis in the District of Columbia without being licensed as a cannabis retailer by ABCA; (ii) selling illegal cannabis flower and other cannabis products not cultivated or manufactured by licensed cultivators and manufacturers in DC; (iii) falsely advertising the cannabis they sold as legal, safe, and from legal sources; and (iv) selling cannabis in deceptive packaging as a premium product that licensed dispensaries cannot sell under the laws of the District of Columbia.  Additionally, some of the Eighteen Illegal Dispensary-Defendants sold other illegal "buzz" products partially substitutable for cannabis, such as "magic" mushrooms and flavored tobacco products to confuse or deceive consumers to gain an unfair competitive advantage over licensed dispensaries.

343.    Each of the Nineteen Property Owner-Defendants materially participated in the establishment and operation of an illegal cannabis dispensary by leasing commercial space to the illegal dispensaries knowing (or have reason to know) of their intent to sell illegal cannabis flower, and other cannabis products.  Where a Property Owner-Defendant received a percentage of the illegal dispensaries' revenues from the sale of illegal cannabis, that Property Owner-Defendant itself functioned as an illegal dispensary.

344.    The legal cannabis market was injured as a direct result of the unfair competition of the illegal dispensaries and the contributory unfair competition of the property owner-defendants. The legal cannabis market was injured by the commercial sales diverted from the sale of legal cannabis in the District of Columbia.

345.    Plaintiff seeks equitable relief equal to disgorgement of the profits of the Defendants for the harm they caused ALCE members and the legal cannabis market represented by ALCE from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the common law in the District of Columbia for unfair competition and false advertising.

**COUNT VI – LIABILITY FOR NEGLIGENCE IN OPERATING ILLEGAL CANNABIS DISPENSARIES SELLING ILLEGAL CANNABIS AND CANNABIS PRODUCTS**

346.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 345 above.

347.    Each of the Eighteen Illegal Dispensary-Defendants owed a duty of care to the legal cannabis market (composed of the licensed cultivators, manufacturers, and retailers) in the District of Columbia to apply for and obtain a legal license from ABCA before selling any cannabis in the District of Columbia.

348.    Foreseeability of injury to the legal cannabis market is apparent where a party engages in the illegal sale of cannabis without obtaining a legal license and ignoring the laws in the District of Columbia regarding what cannabis is consider legal for sale in DC and what entities are legally authorized to sell such legal cannabis. If a dispensary is not licensed to sell cannabis flower and other cannabis products to consumers in the District of Columbia then it is not authorized to purchase legally cultivated cannabis flower and other legally manufactured cannabis products. By selling illegal cannabis flower and other cannabis products it was foreseeable that the legal cannabis market would be injured by the diversion of commercial sales and profits to the illegal cannabis market.

349.    Each of the Eighteen Illegal Dispensary-Defendants breached its duty of care to the legal cannabis market in failing to become licensed and in selling illegal cannabis flower and other cannabis products to consumers in the District of Columbia.

350.    The breach of their respective individual duties of care by these defendants is the proximate cause for the legal cannabis market's injury.  These defendants knew or should have known that their actions would cause injury to the legal cannabis market as represented by ALCE.

351.    The legal cannabis market was injured by each of the Eighteen Illegal Dispensary-Defendants' breach of their individual duty of care by the diversion of commercial sales from the legal cannabis market to the illegal cannabis market.  ACLE seeks equitable relief through the disgorgement of the profits of the Eighteen Illegal Dispensary-Defendants for the harm caused ALCE members and the legal cannabis market represented by ALCE from the earlier of (1) three years prior to the filing of this complaint or (2) the date the illegal dispensary began operations through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for their negligence in the breach of their duty to the legal cannabis market represented by ALCE.

## COUNT VII – LIABILITY FOR NEGLIGENCE IN BREACH  OF DUTY OF DUE DILIGENCE IN ALLOWING ILLEGAL CANNABIS DISPENSARIES TO OPERATE

352.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 351 above.

353.    Each of the Nineteen Property Owner-Defendants owed a duty of care to the legal cannabis market in the District of Columbia to exercise due diligence in the leasing of commercial property so as not to lease to unlicensed and illegal cannabis dispensaries.

354.    The foreseeability of injury to the legal cannabis market is apparent where commercial property is leased to unlicensed cannabis dispensaries that have no access to legal cannabis supplies, and the property location is promoted as the location source for illegal cannabis in DC.

355.    The duty of care owed by these defendants to the legal cannabis market required them to engage in due diligence to know their tenants and their proposed use of the premises.  The exercise of reasonable due diligence would have prevented leasing the properties to any of these illegal dispensaries.

356.    Furthermore, at any time after leasing to the illegal dispensaries, the property owner defendants could have easily determined that illegal cannabis was being sold at these storefronts and taken action to close down such illegal operations but chose not to do so.

357.    The storefronts of the illegal dispensaries declare on the outside that they sell cannabis. All of the illegal dispensaries make clear that they sell a wide assortment of illegal cannabis flower and other cannabis products.  Even a casual observer would be able to identify any of these dispensaries as selling cannabis—and even a minimal amount of due diligence on behalf of the property owners would have disclosed that each of the Eighteen Illegal Dispensary-Defendants was unlicensed and operating illegally.

358.    Each of the Nineteen Property Owner-Defendants breached their duty of care to the legal cannabis market by failing to exercise due diligence and in leasing to unlicensed dispensaries, and later in continuing to lease to these unlicensed dispensaries.

359.    The breach of their respective individual duties of care by each of the Nineteen Property Owner-Defendants is the proximate cause for the legal cannabis market's injury – the loss of commercial sales to the illegal cannabis market. These defendants knew or should have known that their actions would cause commercial sales injury to the legal cannabis market.

360.    The legal cannabis market was injured by the Nineteen Property Owner-Defendants' breach of their duty of care by the diversion of commercial sales to the illegal cannabis market. ACLE seeks equitable relief equal to disgorgement of the Nineteen Property Owner-Defendants' profits for the harm they caused ALCE members and the legal cannabis market represented by ALCE from the earlier of (1) three years prior to the filing of this complaint or (2) the date the illegal dispensary began operations through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for their negligence in the breach of their duty to the legal cannabis market represented by ALCE.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests the Court find in its favor on all the allegations and claims against the Defendants and order the following equitable relief:

A.    Issue a permanent injunctive order against all Eighteen Illegal Dispensary-Defendants immediately requiring that they cease and desist the purchase and sale of (i) all cannabis not cultivated and/or manufactured by cultivators and/or manufacturers licensed by ABCA in accordance with the laws of the District of Columbia, and (ii) flavored tobacco products specifically prohibited by the DC Flavored Tobacco Prohibition Act of 2021.

B.    Issue a permanent injunctive order against all Nineteen Property Owner-Defendants immediately requiring that they take immediate action to shut down and evict any illegal dispensary-defendant who does not demonstrate the existence of a verifiable cannabis retailer license issued by ABCA, and prohibit each of the Nineteen Property Owner-Defendants from leasing in the future to an entity or individual that sells illegal cannabis, magic mushrooms, or

illegal flavored tobacco products or any electronic smoking device within ¼-mile of a middle or

high school in the District of Columbia, as required by the laws of the District of Columbia.

C.      Issue an order granting equitable relief to Plaintiff disgorging the profits of the Eighteen

Illegal Dispensary-Defendants (1314 9th Street LLC t/a Chill Tobacco ("Chill Downtown

Dispensary"), TG Cigars Inc. and Happy Bud Wholesaler LLC ("Happy Downtown

Dispensary"), Za Partners LLC t/a Granny Za's ("Granny's Chinatown Dispensary" and "Granny

Adams Morgan Dispensary"), Press Release Ventures LLC t/a Kush Bar ("Kush Downtown

Dispensary"), Gas Monkey DC LLC t/a Monko ("Monko Mt Vernon Square Dispensary"), M. J.

Jennings Enterprise LLC t/a Relva ("Relva Mt Vernon Square Dispensary"), Khossrow B.

Fahimi t/a Shiva Electronic ("Shiva Adams Morgan Dispensary"), Kaliiva Corp. ("Kaliiva

Adams Morgan Dispensary"), La La Juice Corp. t/a Apple Dream ("Apple Mt Pleasant

Dispensary" and "Apple Adams Morgan Dispensary"), G La La Juice Corp. t/a Apple Dream

("Apple Park View Dispensary"), Dreams LLC ("Dreams Adams Morgan Dispensary"), Grow

Club LLC ("Grow Adams Morgan Dispensary"), Grindstone Universal LLC ("Peace Adams

Morgan Dispensary"), Peace In The Air LLC ("VIPeace Adams Morgan Dispensary"), Capitol

Hemp LLC ("Hemp Adams Morgan Dispensary"), Vibez Print LLC ("Vibez Adams Morgan

Dispensary") for the harm they caused ALCE members and the legal cannabis market

represented by ALCE from the earlier of (1) three years prior to the filing of this Complaint or

(2) the date the illegal dispensary began operations, through the date of judgment in this case (or

the date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act

for unfair competition and false advertising, violation of DC common law against unfair

competition, and negligence in selling illegal cannabis without a license issued by ABCA, equal

to, not less than, the following profits through December 31, 2024, to be updated as appropriate

through the date of judgment:

1.     For Chill Downtown Dispensary- $884,850
2.     For Happy Downtown Dispensary- $1,989,615
3.     For Relva Mt Vernon Square Dispensary- $472,815
4.     For Kush Downtown Dispensary-$189,000
5.     For Granny Chinatown Dispensary-$324,960
6.     For Granny Adams Morgan Dispensary-$464,062
7.     For Shiva Adams Morgan Dispensary-$484,875
8.     For Monko Mt Vernon Square Dispensary-$808,080
9.     For Kaliiva Adams Morgan Dispensary-$313,933
10.    For Apple Park View Dispensary-$381,250
11.    For Apple Mt Pleasant Dispensary-$449,280
12.    For Apple Adams Morgan Dispensary- $275,041
13.    For Dreams Adams Morgan Dispensary- $637,505
14.    For Grow Adams Morgan Dispensary- $389,250
15.(i)  For Peace Adams Morgan Dispensary- $375,416
15.(ii) For VIPeace Adams Morgan Dispensary- $322,500
16.    For Hemp Adams Morgan Dispensary-$508,830
17.    For Vibez Adams Morgan Dispensary-$242,968

D.     Issue an order granting equitable relief to Plaintiff disgorging the profits of the Nineteen

Property Owner-Defendants (1314 ½ Inc. ("1314 9th Property Owner"),  Welch Family Limited

Partnership Eleven, LP ("1118 9th Property Owner"),  Welch Family Limited Partnership Four,

LP ("311 H Property Owner"), Thomas A. Hart ("1219 11th Property Owner"), Eddington Hamm

Moy, Cynthia Pat Goon Okoye -Successor Trustee under The Wellington Hamm Moy Trustee,

Beatricia Chu Goon -Trustee under The Arhtur  and Beatricia Goon Trust, Diana Chu Moy, and

Gallery Row Holdings LLC ("515 H Property Owner"), Jessica L. Racine-White and Jessica L.

Racine-White Trustee ("1664 Columbia Property Owner" and "2438 18th Property Owner"), 448

K Street LLC ("444 K Property Owner"), Dixie Barbara Chinn ("1731 Columbia Property

Owner"), Georgia Mixed Use Building LLC ("3003 Georgia Property Owner"), Blue Nile Realty

LLC ("3106 Mt. Pleasant Property Owner"), 1748 Columbia Rd LLC ("1748 Columbia Property

Owner"), Soleiman Askarinam ("2335 18th Property Owner"), Jonathan Askarinam Trustee

("Other 2335 18th Property Owner"), 2337 18th St LLC ("2337 18th Property Owner"), 2337

Bond St Equities LLC ("Other 2337 18th Property Owner"), 2118 FSD Property LLC ("2118 18th

Property Owner"), 1770 Columbia Road N.W. Associates LLC ("1770 Columbia Property

Owner"), and 1768 Columbia Road N.W. Associates LLC (1768 Columbia Property Owner") for

the harm they caused ALCE members and the legal cannabis market represented by ALCE from

the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal

dispensary began operations, through the date of judgment in this case (or the date the illegal

dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for contributory

unfair competition and false advertising, violation of DC common law against unfair

competition, and negligence in allowing illegal cannabis to be sold by unlicensed dispensaries

from commercial properties owned by the Nineteen Property Owner-Defendants, equal to, not

less than, the following profits through December 31, 2024, to be updated as appropriate through

the date of judgment:

1. For 1314 9th Property Owner- $353,940
2. For 1118 9th Property Owner-$795,846
3. For 311 H Property Owner-$189,126
4. For 1219 11th Property Owner-$75,000
5. For 515 H Property Owner-$129,960
6. For 1664 Columbia Property Owner-$185,675
7. For 2438 18th Property Owner-$193,950
8. For 444 K Property Owner-$323,232
9. For 1731 Columbia Property Owner-$125,573
10. For 3003 Georgia Property Owner-$52,500
11. For 3106 Mt Pleasant Property Owner-$179,712
12. For 1748 Columbia Property Owner-$110,016
13.(i) For 2335 18th Property Owner-$217,500
13.(ii) For Other 2335 18th Property Owner-$37,500
14.(i) For 2337 18th Property Owner-$62,280
14.(ii) For Other 2337 18th Property Owner-$93,420
15. For 2118 18th Property Owner-$279,166
16. For 1770 Columbia Property Owner-$203,532
17. For 1768 Columbia Property Owner-$97,187

E.      Grant Plaintiff recovery for the costs of litigation, and reasonable attorney fees, and any other relief deemed equitable by the Court.

Respectfully submitted,

Alliance of Legal Cannabis Entities-DC, LLC

/s/ Jon L. Brunenkant
Jon L. Brunenkant
DC Bar No. 966630
Brunenkant & Associates PLLC
1717 Pennsylvania Avenue NW
Suite 1025
Washington, DC 20006
(202) 559-8637
jonbrunenkant@gmail.com

Attorney for Alliance of Legal Cannabis Entities-DC, LLC

December 6, 2024